[Crim. No. 767. Third Appellate District.—May 13, 1924.]

THE PEOPLE, Respondent, v. CHARLES S. RALPH, Appellant.

[1] CRIMINAL LAW—FRAUDULENT PRESENTATION OF CLAIM FOR ALLOW-
ANCE OR PAYMENT—CHARACTER OF BOARD—INDICTMENT—PLEAD-
ING.—An indictment purporting to charge the crime denounced by
section 72 of the Penal Code of fraudulently presenting a claim
to a city board for allowance and payment, and containing an
allegation that the alleged fraudulent claim was presented to "the
officers of said Sacramento City School District, to-wit: to the
school board of said school district," states a public offense, since
the courts take judicial notice that the city board of education
is the "school board" of Sacramento City School District and
the only official body authorized by law to allow a claim against
the district; and where the defendant did not demur to the in-
dictment, to hold that the indictment does not state an offense
would be to reverse the maxim that "the law respects form less
than substance."

[2] ID.—BOARD OF EDUCATION—CHARACTER OF.—The board of educa-
tion of a chartered city is a city board.

[3] ID.—ALLOWANCE OF CLAIM—PLEADING—SUFFICIENCY OF INDICT-
MENT.—An allegation in such an indictment that defendant pre-
sented to the board the "fraudulent claim and demand for the
payment to him . . . of the sum of $369" is sufficient, for one
to present to a board, authorized to allow claims, a claim and
demand for payment of the same to him, is certainly to present
the claim for allowance, the only way in which it could be paid
to him.

[4] ID. — CONTINUANCES — ERROR CURED. —In a prosecution for the
crime of fraudulently presenting a bill or claim to a city board
for allowance and payment, where after the request of defend-
ant's counsel for a continuance of five days was denied, it ap-
peared that the latter by reason of subsequent continuances had
five clear days in which to prepare for the trial of issues in
real controversy, the length of time he had originally requested,
if it was error to refuse the requested continuance in the first
instance, the subsequent continuances cured the error.

[5] ID.—EVIDENCE—IMPEACHMENT.—In such prosecution, defendant's
counsel having asked a prosecution witness on cross-examination
whether he had made a statement to an attorney to the effect

1. Form and sufficiency of indictments, note, 3 Am. St. Rep. 279.
See, also, 12 Cal. Jur. 478; 14 Cal. Jur. 20; 14 R. C. L. 182.

4. See 2 Cal. Jur. 1004; 8 Cal. Jur. 599; 2 R. C. L. 230.

that he (the witness) was responsible for a shortage, which resulted in making the presented claim false, and that defendant had nothing to do with it, and the inference to be drawn from the witness' answer to the question having been that he (the witness) alone committed the offense and that defendant had nothing to do with it, a question asked by defendant of said attorney, whether said statement had been made to him by the prosecution witness might well have been permitted where the purported statement of the prosecution witness was in direct conflict with the latter's testimony to the effect that the defendant directed him to commit the fraud, but, in view of the witness' substantial admission that he had made the statement, defendant suffered no prejudice from the ruling in not permitting the question.

[6] ID.—DUTY OF SCHOOL BOARD—ALLOWANCE OF CLAIM.—The duty of determining the facts as to the purchase, quality, value and delivery of materials to a school district being imposed upon the school board, such determination as to the validity of a claim for said materials, together with an order for the payment thereof, constitutes an allowance of such claim, within the meaning of section 72 of the Penal Code.

[7] ID.—ACCOMPLICE—INSTRUCTIONS.—In such prosecution, where, assuming that the jurors were of ordinary intelligence, they must have been satisfied beyond a reasonable doubt that two witnesses were accomplices under the definition given by the court to the effect that "all persons concerned in the commission of a crime, whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission, are accomplices," the refusal of a proposed instruction to the effect that it was material to determine whether said witnesses were accomplices and that if the jury entertained a reasonable doubt upon that question they should find that such witnesses were accomplices was not prejudicial.

(1) 31 C. J., p. 670, sec. 191.   (2) 25 C. J., p. 661, sec. 103. (3) 25 C. J., p. 661, sec. 103.   (4) 16 C. J., p. 483, sec. 875, p. 1117, sec. 2614 (Anno.).   (5) 17 C. J., p. 310, sec. 3655.   (6) 25 C. J., p. 661, sec. 103.   (7) 17 C. J., p. 349, sec. 3706.

APPEAL from a judgment of the Superior Court of Sacramento County and from an order denying a new trial. Charles O. Busick, Judge. Affirmed.

5. Impeachment by witness by proof of prior inconsistent statements, note, 73 Am. Dec. 762. See, also, 28 R. C. L. 633.

7. Who are accomplices, note, 138 Am. St. Rep. 272. See, also, 8 Cal. Jur. 277; 1 R. C. L. 157.

The facts are stated in the opinion of the court.

Mark L. Burns and R. Platnauer for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

FINCH, P. J.—The defendant was convicted of the "crime of fraudulently presenting a bill or claim to a public officer for allowance and payment, a felony, as charged in the indictment." This appeal is from the judgment of conviction and the order denying his motion for a new trial.

The indictment charges that the defendant agreed to sell and deliver to the Sacramento City School District thirty tons of coal at the price of $12.30 a ton; that he delivered twenty-five tons and two hundred fifty-six pounds thereof and no more; that thereafter he "did wilfully, unlawfully, knowingly and feloniously and with the intent to defraud said Sacramento City School District, present and caused to be presented to the officers of said Sacramento City School District, to wit: to the school board of said school district, a certain false and fraudulent claim and demand for the payment to him, said defendant, of the sum of $369, the said claim or demand being for thirty full tons of said coal at the price of $12.30 per ton, which defendant falsely claimed he had delivered to said school district on said contract, which said claim and demand the officials of said school district were authorized then and there to pay and allow if said claim and demand were genuine, which said claim was by said officials of said Sacramento City School District allowed in full and thereafter paid in due course to said defendant."

It is not claimed that the evidence is insufficient to show defendant's guilt. The defendant was in the wood and coal business. His salesman and office manager, A. S. Kennedy, testified that the defendant said "the coal was sold very cheap" and directed the witness to "short-weight it"; that pursuant to such directions the witness instructed the man who made delivery of the coal, Barney Brooks, "to put on a few sacks of coal in sacks and use it as a tail board, when they backed up to the car; to throw the coal on and take the load over to the public scales and weigh the load and, on the

way back, to drop off the loaded sacks, then make his delivery to the school, and when he made his delivery to the school, to come back and pick up the loaded sacks and use them as a tail gate''; and that the man ''went ahead and followed instructions.'' The foreman of the grand jury which returned the indictment testified that the defendant voluntarily stated before that body: ''I don't want Kennedy to take all the blame . . . for the short delivery of this coal''; that when asked if Kennedy had told him of his plan for the short delivery the defendant answered: ''He had told me of it. . . . I didn't answer yes or no''; that a grand juror asked him if he thought it was right to make the short delivery and defendant replied: ''As I look back over it now, I don't think it was.'' The foreman further testified in part as follows: ''I remember, myself, of asking Mr. Ralph if these men who worked for him informed him of this shortage, why he did not make the delivery at that time, and his answer was that 'I knew this thing was coming up, and I was waiting to see what was going to happen; I expected to make good when the matter was brought up.' But he had waited a month and a half and hadn't made good, and the matter was brought up. That is, he waited a month and a half after the coal was delivered before he presented his bill to the city for the coal. Q. And did he state anything as to whether he knew of the short delivery before he presented the claim to the city? A. Well, the men had gone to him and told him about it, and he admitted that they did tell him about it. . . . Q. He told you that the men had told him about the shortage . . . before the bill was presented? A. Yes, sir.'' Several other members of the grand jury gave similar testimony. The defendant testified that in the grand jury room ''there were many questions asked, and sometimes they were asked two or three at a time, and . . . there was quite a bit of confusion, as would be amongst fifteen or sixteen people trying to interrogate one witness. Some of the questions I may have misunderstood; some of them I didn't.'' He denied having directed Kennedy to give short weight in delivering the coal or of having any knowledge that short weights were given, and testified that before the coal was delivered ''Mr. Kennedy said: 'For the rotten way in which the school department has treated us in this deal, we should short weight it.' . . . I said: 'Kennedy,

67 Cal. App.—18

are you crazy?' . . . That was all there was of it." While there is other testimony favorable to defendant and tending to discredit some of that produced by the prosecution, a very strong case was made against him.

[1] Section 72 of the Penal Code provides: "Every person who, with intent to defraud, presents for allowance or for payment to any state board or officer, or to any county, town, city, ward, or village board or officer, authorized to allow or pay the same if genuine, any false or fraudulent claim, bill, account, voucher, or writing, is guilty of a felony." It is contended that the indictment does not state a public offense; that the allegation therein that the alleged fraudulent claim was presented to "the officers of said Sacramento City School District, to wit: to the school board of said school district" does not constitute an averment that such claim was presented to the city board of education, the only body authorized to allow the claim. Article IX of the charter of Sacramento provides: "Sec. 53. The government of the Sacramento City School District and the Sacramento City High School District shall be vested in a board of education consisting of five members. . . . Sec. 55. The board of education shall have the entire control and management of the public schools of the city in accordance with the Constitution and the general laws of the state." (Stats. 1921, p. 1939.) The courts take judicial notice that the city board of education is the "school board" of Sacramento City School District and the only official body authorized by law to allow a claim against the district. The term "school board" is in common use to designate either the board of school trustees or the city board of education, depending upon the character of the district, and no one could be in doubt as to the meaning of the term. The defendant did not demur to the indictment. To hold that the indictment does not state an offense would be to reverse the maxim that "the law respects form less than substance."

[2] It is urged that the board of education of a chartered city is not a city board. The contrary has been held. (*Stern* v. *City Council of Berkeley,* 25 Cal. App. 685, 689 [145 Pac. 167].)

[3] It is next urged that the indictment is defective in failing to allege that the fraudulent claim was presented "for allowance or payment." It is alleged that the defend-

ant presented to the board the "fraudulent claim and demand for the payment to him . . . of the sum of $369." For one to present to a board, authorized to allow claims, a claim and demand for payment of the same to him, is certainly to present the claim for allowance, the only way in which it could be paid to him.

[4] Appellant contends that the court abused its discretion in refusing to grant him a reasonable time to prepare for trial. Two previous trials had resulted in disagreements of the juries. October 19, 1923, defendant's counsel withdrew from the case. November 13th was the day set for the third trial. On that day the defendant informed the court that he was without counsel and stated that he "was without means to employ counsel, and desired the court to appoint counsel to defend him." The court thereupon appointed Charles A. Bliss as counsel for defendant and continued the trial for two days. November 14th, at 11:55 o'clock A. M., the court vacated the order appointing Bliss and made an order appointing Mark L. Burns as counsel for defendant. November 15th Burns presented affidavits to the effect that the reporter's transcript of the testimony taken at the first trial consisted of 306 typewritten pages and a portion of that at the second trial covered 194 pages and that of the proceedings before the grand jury consisted of 69 pages; that he had no information as to any of the facts in the case prior to his appointment and that it had been physically impossible for him to prepare for trial within the time given him, and requested a continuance of five days. If nothing further appeared than the foregoing, it would appear that the action of the court in forcing the case to trial was clearly unreasonable. The district attorney; however, presented a writing dated August 9, 1923, addressed to the corporation commissioner of this state, and signed by defendant, in which appears the following: "My statement shows that I have fixed assets to the extent of $13,415.84." From this and other evidence of a similar character the court would have been justified in vacating the order appointing counsel for defendant on the ground that his statement to the effect that he was without means to employ counsel was false and that his request for the appointment of counsel to defend him was made in bad faith. It further appears that the selection of the jury was completed

on the 16th of November. Evidence concerning which there seems to have been no controversy or dispute was introduced on that day and the trial was then continued to November 19th and on the latter day, without taking any testimony, the case was adjourned to November 21st. It thus appears that counsel for defendant had five clear days in which to prepare for the trial of issues in real controversy, the length of time he had originally requested. If it was error to refuse the requested continuance in the first instance, the subsequent continuances cured the error.

[5] Kennedy testified on direct examination: "I was called to appear before the grand jury . . . and I wanted to get some legal advice . . . because I made up my mind what I intended to do . . . so I went to Mr. Ralph's attorney, Mr. Bliss, and . . . I explained it, the case, to Mr. Bliss, that I . . . wanted to take the whole thing upon my own shoulders. . . . Took the whole blame myself, . . . in order to make Mr. Bliss understand . . . what I· wanted to know from him, that, if I took the entire ·blame upon my own shoulders, and things went against me, what was the penalty. So, after Mr. Bliss heard my statement, story, in which I acknowledged everything, why, then he told me what the penalty would be." What the purpose of the prosecution was in introducing this testimony does not appear. It seems to have been wholly immaterial and inadmissible, but defendant made no objection thereto. On cross-examination by counsel for defendant, the following occurred: "Q. I will ask you if you made this statement to Mr. Bliss: 'That Mr.· Ralph did not know anything about the shortage, and the whole thing was worked out and carried out by myself, and that Mr. Ralph had nothing to do with it?' A. I don't remember just what statement that I made to Mr. Bliss, but what I explained this morning was that . . . if I took this thing on my own shoulders, what would the penalty be. . . . I only had five minutes to talk with Mr. Bliss and, in order to get this thing right, the only way I could get it in was to take the whole blame upon my own shoulders and ask Mr. Bliss what would the penalty be." The inference to be drawn from the answer is that in the conversation referred to Kennedy stated that he alone committed the offense and it would follow that the defendant "had nothing to do with it." Counsel for defendant then dropped the

subject, as if satisfied, and did not insist upon a categorical answer to the question. He thereafter called Mr. Bliss as a witness for defendant and asked him whether Kennedy had made the statement contained in the question. The court sustained the prosecution's objection to the question, apparently upon the ground that Kennedy had admitted making the statement. The question was permissible only for the purpose of impeaching the witness Kennedy, and counsel should have laid the foundation therefor by eliciting from such witness a direct answer to the question put to him. Had the witness testified that he did not remember whether he had made the statement to Bliss, the answer would have furnished a sufficient foundation for the impeaching question. (*Ehat* v. *Scheidt,* 17 Cal. App. 430, 436 [120 Pac. 49].) The natural inference from his answer, however, is that he had, in substance at least, made such statement. Since the purported statement was in direct conflict with Kennedy's testimony to the effect that the defendant directed him to commit the fraud, the court might well have overruled the objection to the impeaching question, but, in view of Kennedy's substantial admission that he had made the statement, it is thought that the defendant suffered no prejudice from the ruling made.

[6] At the oral argument the appellant contended that the city board of education is not authorized to allow claims of the character of that involved in this action. The board has authority "to manage and control school property" and "to purchase school furniture . . . and apparatus, and such other articles as may be necessary for the use of schools." (Pol. Code, sec. 1608.) It is also authorized to order the payment of claims against the district. If the county superintendent approves the claim, he indorses upon the order, "examined and approved." The order is then presented to the county auditor, "who shall in case he allows said demand, indorse upon it, 'allowed.'" (Pol. Code, sec. 1543.) From the foregoing provisions it seems clear that the function of the school board in allowing claims against the district is similar to that of a board of supervisors in allowing claims against a county. Neither the county superintendent nor the auditor is ordinarily in a position to ascertain whether materials have been purchased and delivered to a school district or the quality or value thereof, and the code

provisions upon the subject do not contemplate that those officers shall make the investigation, but the duty of determining such facts has been imposed upon the school board. Such determination as to the validity of a claim, together with an order for the payment thereof, certainly constitutes an allowance of such claim, within the meaning of section 72 of the Penal Code.

[7] The defendant requested the court to instruct the jurors that it was material to determine whether the witnesses Kennedy and Brooks were accomplices and that if they entertained a reasonable doubt upon that question they should find that such witnesses were accomplices. At defendant's request the court instructed the jury "that all persons concerned in the commission of a crime, whether they directly commit the act constituting the offense, or aid or abet in its commission, or, not being present, have advised and encouraged its commission, are accomplices." Kennedy testified that he instructed Brooks to remove a part of each load of coal after it was weighed and before the delivery thereof, and Brooks testified that he so removed twelve sacks of coal from each of eight loads. Assuming that the jurors were of ordinary intelligence, they must have been satisfied beyond a reasonable doubt, from the testimony of Kennedy and Brooks, which was wholly uncontradicted as to their part in the fraud, that these witnesses were accomplices, under the foregoing definition given by the court, and, therefore, the refusal of the proposed instruction was not prejudicial.

The other grounds urged for a reversal are so manifestly untenable as to merit no discussion.

The judgment and the order are affirmed.

Weyand, J., *pro tem.*, and Plummer, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 10, 1924.

All the Justices concurred.