[Crim. No. 4272. In Bank.—July 2, 1940.]

THE PEOPLE, Respondent, LUELLA KNOTT, Appellant.

J. Oscar Goldstein, Burton J. Goldstein, Phil F. Garvey, George Olshausen and Clifford D. Good for Appellant.

Earl Warren, Attorney-General, and J. Q. Brown, Deputy Attorney-General, for Respondent.

EDMONDS, J.—By its verdicts, a jury found that upon three different occasions Luella Knott, while auditor of Butte County, violated section 504 of the Penal Code relating to the duties of public officers. But, quite in contrast with most cases, she does not dispute the facts relating to the charges against her, and the principal question for decision upon her appeal from the judgments of conviction and from the order denying a motion for a new trial concerns the construction of the statute under which she was prosecuted.

The first of the charges concerns certain interest coupons. On July 1, 1937, interest was due upon outstanding highway bonds of Butte County, and as one of the duties of her office, the appellant was required to draw warrants authorizing the payment of the amounts specified in the coupons when and as they were presented. By drawing a warrant for $625, she secured that amount from the county treasury upon the pretext that it was due for certain of such coupons, although they were paid under another warrant. A year later she deposited the same sum with the county treasurer as a "refund on double payment".

By a second indictment, containing two counts, the appellant was accused of embezzling other public money. It appears that the board of supervisors had authorized the installation of a new bookkeeping system in the auditor's office, and the appellant made claim for $110, asserting that it was due on account of money advanced by her for "time and expense of tax expert". Later, she presented another claim for $270 which she stated was the cost of a part of that system. These claims were approved by other county officers and were paid by the treasurer. Over the objection of the appellant, evidence was received to the effect that Miss Knott had expended no money for either of the purposes declared by her.

When the state concluded the presentation of evidence, the appellant moved the court to advise the jury to acquit the appellant, and upon the denial of that motion offered only the testimony of character witnesses in her behalf.

Section 504 of the Penal Code provides: "Every officer of this state, or of any county, . . . who fraudulently appropriates to any use or purpose not in the due and lawful execution of his trust, any property which he has in his possession, or under his control by virtue of his trust, . . . is guilty

of embezzlement." Each of the indictments accuses Miss Knott of violating this section in that while she was county auditor, "and was a person entrusted with and having [public money] under her control . . . " she embezzled a stated amount of such funds.

The appellant's principal contention is that as county auditor she did not have any of the county's money in her possession or under her control within the meaning of this statute and therefore cannot be guilty of embezzlement as charged. Other points urged by her are that the trial court committed prejudicial error in admitting evidence to impeach the two claims which had been allowed and ordered paid by the board of supervisors; that the trial court misdirected the jury as to matters of law; that the district attorney was guilty of prejudicial misconduct in his argument to the jury; that upon any indictment for embezzlement, it is a sufficient defense that the property was appropriated openly and avowedly under a claim of title preferred in good faith, even though such claim is untenable; and, finally, that on the whole case, by reason of erroneous rulings of the trial court, there has been a miscarriage of justice.

Although the county treasurer is charged with the receipt and disbursement of county money (sec. 4101, Pol. Code), such funds, at least to a limited extent, are within the control of the auditor. One who is not in possession of money may have it under his control in the sense that it is under his direction and management. Indeed, that is exactly the situation shown in the present case. Miss Knott, as auditor, although not in possession of the county's money, had authority to issue warrants payable by the treasurer. The one for $625 issued by her to obtain payment of what was alleged to be an obligation of the county fixed by law, required no approval by any other public officer. It was the duty of the county treasurer to pay such a warrant, regular on its face, upon presentation, provided there were funds available therefor. Under such circumstances to say that the auditor had no control over the money of the county would exalt form and ignore substance.

Section 504 of the Penal Code clearly indicates that it is complementary to section 424 of the code which denounces, as a felony punishable by imprisonment and disqualification from holding public office, certain specified acts, described

with considerable particularity, by state and other officers handling public money. The statute under which appellant was prosecuted has a much more restricted application, being limited to the appropriation of public money, but it includes not only those having possession of it but also any person who has control of such funds. The results accomplished by the appellant show that she had enough control of the county's money to secure it for her own purposes upon the warrants which she wrongfully issued and presented to the county treasurer for payment, and her acts clearly fall within the legislative definition of the felony of which she stands convicted.

The appellant's contention that the trial court erred in admitting evidence concerning the falsity of the facts stated by her in the two claims for money advanced in payment of office expenses, is based upon the general rule that the allowance of such a claim is conclusive. Although in civil cases the determination of a board of supervisors that the county has incurred an indebtedness in a reasonable amount for goods or services has been held to be final if the claim shows on its face that the amount is clearly chargeable to the county, and within the jurisdiction of the board to accept or reject (*County of Yolo* v. *Joyce,* 156 Cal. 429 [105 Pac. 125]; *County of Alameda* v. *Evers,* 136 Cal. 132 [68 Pac. 475]), this rule has no application in a criminal prosecution of a claimant. Conclusive presumptions and estoppels will not be allowed to prevent proof of the *corpus delicti.* For example, in *People* v. *Lanterman,* 9 Cal. App. 674 [100 Pac. 720], the state proved that railroad fare charged to the county was not in fact paid, and in *People* v. *Ralph,* 67 Cal. App. 270 [227 Pac. 642], the prosecution was based upon evidence that coal charged for was not delivered. Although in each of these cases the defendant was charged with presenting a false claim (sec. 72, Pen. Code), there is no difference, in principle, between them and the present case.

The appellant next complains that the jury was erroneously instructed, because the trial judge, in stating that restoration of property embezzled is not a ground of defense to a criminal prosecution, did not tell them that it "authorizes the court to mitigate punishment in its discretion". (Sec. 513, Pen. Code.) Had these words been used, the instruction

would have been prejudicially erroneous. (*People* v. *Smith*, 206 Cal. 235 [273 Pac. 789].)

Another point relied upon by the appellant relates to the conduct of the district attorney in his closing argument to the jury. He mentioned the absence of certain witnesses, who were under subpoena, indicating that they would have testified against her if present. The appellant objected to this statement but made no request that the jury be admonished to disregard it. Under these circumstances there is no foundation for the assignment of error. (*People* v. *King*, 13 Cal. (2d) 521 [90 Pac. (2d) 291]; *People* v. *Green*, 13 Cal. (2d) 37 [87 Pac. (2d) 821]; *People* v. *DuBois*, 16 Cal. App. (2d) 81 [60 Pac. (2d) 190].) However, it may be noted that the jury was fully charged concerning their duty to consider only the evidence presented during the trial, and the remark complained of falls far short of conduct amounting to reversible error.

Another point urged by the appellant concerns her motion that the court advised the jury to return a verdict of acquittal upon the two counts in the second indictment. It is contended that this motion should have been granted as a matter of law. She relies upon the statutory rule that in a prosecution for embezzlement, "it is a sufficient defense that the property was appropriated openly and avowedly, and under a claim of title preferred in good faith, even though such claim is untenable". (Sec. 511, Pen. Code.) But a defense upon this ground presents an issue of fact, not of law, and it was for the jury to determine whether she secured the money in the manner prescribed by the legislature as justification. By its verdicts, returned after instructions which included this code section, the jury impliedly found that she did not take the county's money "openly and avowedly, and under a claim of title preferred in good faith".

Finally, says the appellant, by reason of erroneous rulings of the trial judge there has been a miscarriage of justice. But she refers to no specific act, other than the rulings which have been passed upon, to support this contention. The record shows that the appellant was convicted upon a fair trial at which she declined to testify or offer any evidence concerning the acts of which she stands convicted.

The order denying a new trial and the judgments are, and each of them is, affirmed.

Curtis, J., Shenk, J., and Gibson, C. J., concurred.

CARTER, J., Dissenting.—I dissent. In my opinion, the evidence produced at the trial of this case was insufficient to support the conviction of the defendant on any of the three counts of the indictment charging her with a violation of section 504 of the Penal Code. It was the obvious intention of the legislature in the enactment of this section to limit its application to cases where public officers or their deputies, clerks or servants fraudulently appropriate to any use or purpose not in the due and lawful exercise of the trust reposed in them, any property which they have in their possession, or under their control by virtue of such trust. To my mind, it is absurd to say that money in a county treasury is under the control or in the possession of a clerk or deputy in the county auditor's office, or is in the possession or under the control of any county official except the county treasurer and the clerks and deputies in his office. The mere fact that the law authorizes the auditor to draw a warrant on the county treasury for the payment of certain disbursements authorized by law, does not place the funds of the county treasury under the control of the auditor. It is true that the auditor has a function to perform in disbursing the funds in the county treasury, but this function is clerical in its nature and the county treasurer is not authorized to pay any money to the county auditor or anyone else except upon warrants which the law authorizes to be issued for the payment of obligations against the county.

One indictment charged the defendant with embezzling the sum of $625 coming into her possession and under her control by virtue of her trust as auditor. This money was drawn from a special highway bond fund in the possession of the county treasurer by means of a warrant drawn by the defendant in favor of the Chico branch of the Bank of America for the purported payment of 37 interest-bearing coupons of highway bonds, which had been previously paid. The county treasurer was not required to pay this warrant and should not have paid the same without the surrender to him for cancellation of the coupons which the warrant was purportedly

drawn to pay; in other words, if the treasurer had insisted upon the surrender of the coupons covered by the warrant at the time the warrant was presented for payment, the warrant would never have been cashed by him, and the defendant would not have received the money covered thereby. How, then, can it be said that the defendant had the money covered by said warrant in her possession and under her control? It is true that under the law she had the right to draw warrants for the payment of maturing interest coupons on bonds issued by the county, but the treasurer was not authorized to pay such warrant until the interest coupons were surrendered to him for cancellation. If such procedure had been followed, money could not have been fraudulently and unlawfully taken from the possession or control of the treasurer. Manifestly, it was not in the possession or under the control of the defendant until the treasurer cashed the warrant which he was not authorized to do without the surrender of the interest coupons which it was purportedly drawn to pay.

While the evidence produced at the trial might be sufficient to support a conviction under an indictment charging the defendant with a violation of section 484 of the Penal Code, it falls far short of being sufficient to support a conviction for a violation of section 504 of that code.

The situation with reference to the alleged embezzlement by the defendant of the sums of $110 and $270 alleged to have come into her possession and under her control by virtue of her trust as auditor is somewhat different than that with reference to the alleged embezzlement of the sum of $625 by her. In my opinion, the evidence was clearly insufficient to support the conviction of the defendant on either of these counts for a violation of section 504 of the Penal Code.

It is the claim of the prosecution in this case that the defendant presented claims against the county of Butte for the sums of $110 and $270, respectively, for alleged expenses incurred by her in installing in the auditor's office a double entry bookkeeping system. These claims were filed by the defendant with the county clerk of Butte County, and approved by the board of supervisors of said county. They were then audited by the defendant as legal claims against the county and presented to the treasurer for payment. They were paid in due course. It is claimed that both of these claims were fraudulent because the alleged expenses covered

thereby were never incurred by the defendant. Certainly, it cannot be said that the defendant had the sums of money represented by these claims, in her possession or under her control within the meaning of section 504 of the Penal Code, as the method which she used to obtain these sums was the same method used by any other claimant against the county. Can it be said that a laborer employed by a member of the board of supervisors to perform work on the county road who presents a claim against the county for work which he never performed, and obtains money from the county treasurer on such claim, is guilty of a violation of section 504 of the Penal Code? This conclusion would necessarily follow if the defendant in the case at bar is guilty of such violations in obtaining the above-mentioned sums on the claims presented by her, as section 504 applies with equal force to a servant of such officer as it does to the officer himself, and the members of the board of supervisors have a function to perform in approving the claims on which funds are drawn from the county treasury. In other words, the sums of $110 and $270 which it is claimed defendant obtained from the county treasurer on the claims presented by her, were no more under her control or in her possession than the sum which the laborer on the county road obtained from the county treasury on his claim which had to go through the identical procedure followed by the defendant in the presentation, approval and payment of the claims presented by her.

To my mind, it is obvious that it was the intention of the legislature in the enactment of section 504 of the Penal Code to make it applicable only to cases where public officers or their deputies, clerks or servants misappropriate property belonging to the political subdivision by which they are employed, when such property is in their possession or under their control in the sense that they have dominion over the property and they appropriate the same in violation of their trust.

In my opinion the defendant in the case at bar was in no different position with respect to obtaining the sums of $110 and $270 on the claims presented by her than anyone else presenting an alleged fraudulent claim against the county and that if such claims were presented with intent to defraud the county, she was guilty of a violation of section 72 of the Penal Code.

In view of the settled rule that penal statutes must be strictly construed, it is obvious to my mind that to construe section 504 of the Penal Code as applicable to the facts of this case, is clearly in violation of this rule.

I am therefore of the opinion that the evidence presented at the trial of this case was insufficient to prove the defendant guilty of any violation of section 504 of the Penal Code, and the judgment of conviction against her on all three counts should therefore be reversed.

Rehearing denied.   Carter, J., voted for a rehearing.