[Crim. No. 983.   Fourth Dist.   June 23, 1955.]

THE PEOPLE, Appellant, v. JERRY NATHANSON, Respondent.

Richardson & Henderson for Respondent.

BARNARD, P. J.—This is an appeal from an order setting aside an indictment charging the defendant with violations of section 504 of the Penal Code. The defendant was a councilman of the city of Palm Springs, and these charges are based on the fact that he used stationery furnished by the city in his campaign for reelection, at the election held on April 13, 1954. Briefly stated, the indictment alleged that he had in his possession certain stationery of the value of $74.56 owned by the city, which was furnished for his use as councilman in the official business of the city; and that between February 26, 1954, and April 13, 1954, he unlawfully appropriated said stationery to his own use and purpose, one not in the due and lawful execution of his trust.

The defendant was duly arraigned and moved the court to set aside the indictment. This motion was granted and the court ordered the indictment set aside and the case dismissed. The People have appealed from that order.

In ruling upon this motion the court said: "Possibly, none of the matters which go to make up my opinion, standing alone, would furnish ground for setting aside the indictment." The court then stated that he thought the defendant's constitutional rights had been violated; that immaterial evidence had been received; that the city attorney of Palm Springs had given improper testimony; and then said: "I think that the

defendant did not receive any sort of a fair and impartial hearing from the members of the Grand Jury.''

The appellant contends that there was no legal ground for setting aside the indictment; that an indictment may not be set aside where supported by some evidence; and that the evidence here was sufficient to show probable cause.

Probable cause means such a state of facts as would lead a man of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused. (*Lorenson* v. *Superior Court*, 35 Cal.2d 49 [216 P.2d 859]; *People* v. *Nagle*, 25 Cal.2d 216 [153 P.2d 344]; *Weber* v. *Superior Court*, 35 Cal.2d 68 [216 P.2d 871]; *Greenberg* v. *Superior Court*, 19 Cal.2d 319 [121 P.2d 713].) Where the evidence is otherwise sufficient, section 995 of the Penal Code does not authorize the setting aside of an indictment because some incompetent evidence is received. (*McFarland* v. *Superior Court*, 88 Cal.App.2d 153 [198 P.2d 318].)

The city purchasing agent testified that for the years 1953 and 1954 stationery purchases for the other councilmen ran from $10.52 to $26.06 while those for the defendant amounted to $101.95; that in March, 1954, the defendant ordered 1,000 letterheads and 1,000 envelopes amounting to $37.28; and that in February he ordered another 1,000 letterheads and 1,000 envelopes of the same value. The city manager identified orders for 1,000 sheets of stationery and 1,000 envelopes on city stationery, for the defendant. He testified that he had no knowledge of any other councilman making similar use of city stationery. There was evidence that these articles were paid for, or in the process of being paid for, by the city; and that they were used by the defendant in sending out letters furthering his campaign. A public stenographer testified that in March and April, 1954, she typed certain letters and mimeographed 1,000 letters, with addressed envelopes, which were on city of Palm Springs stationery, for the defendant; and that she told him that it was too bad to use this expensive bond paper as mimeograph paper would be better for the work. Several voters testified that they received such letters, and identified the letters and envelopes.

The city attorney of Palm Springs testified that the claims for these articles had not been presented to him for his opinion as to their legality; that stationery is provided for councilmen to be used for public business; and that it could not be used for private business ''in the light of the Penal Code.'' When asked whether, in his opinion, the use of the stationery, bought

and paid for by the city, for campaign purposes by a city official would be a lawful use, or whether he would consider it a crime he replied: "I believe it has been held where a councilman or a city official was held criminally liable for using public property for a private use . . . it was deemed a crime . . . I can only state that as a basis." He further testified that he had no knowledge of any ordinance or agreement covering the use of Palm Springs stationery; that he did not tell the respondent that this was illegal; that he did not see the letterheads using the respondent's name for the furtherance of his election before the bill was paid; and that, in his opinion, if the councilman stated the purpose to which he intended to use the property it would still be embezzling.

The defendant testified that he used regular Palm Springs stationery with his name on it in the election campaign; that these articles were paid for by the city; that "The City offices gives all the City Councilmen that stationery"; that "There was never any stipulation as to what it was for; it was just given"; that about a month before he ordered this stationery he told the city treasurer "We are getting in a campaign now, it looks like I am going to need a little more stationery"; that he replied "I think you had better order it then," and "I did"; that he ordered such stationery on four occasions in February and March; that he sent out the various letters referred to; and that he paid the postage himself.

Under established rules, we think there was enough material and competent evidence received to show probable cause, and to support the jury's action in returning the indictment, unless the evidence was rendered insufficient for any of the reasons urged by the respondent.

The respondent first contends that there was no valid evidence showing that the city of Palm Springs was the owner of this stationery; and none showing that the use to which he put it was not one in the due and lawful execution of his trust. It is argued that these articles were a gift to him from the city; that title had passed from the city when he used them; that this stationery had his name on it and was useless to others; that such articles were given to every councilman, to be used for his own personal stationery; that there was no regulation or ordinance defining the scope of respondent's duty with respect to his use of such stationery; that there is no evidence tending to show that he derived any personal gain from the use of the stationery; that the letters he sent out concerned matters vital to the welfare of the city of Palm Springs and served a public

purpose; and that his duty under his trust was so broad and ill-defined that it must be said as a matter of law that the particular use made by him did not violate any law.

The matters thus suggested present questions of fact, rather than legal questions which are controlling at this time. ■ The appropriation of public property for private use by an officer of a municipality is a violation of section 504 of the Penal Code. (*People* v. *Harby*, 51 Cal.App.2d 759 [125 P.2d 874] ; *People* v. *Knott*, 15 Cal.2d 628 [104 P.2d 33, 128 A.L.R. 1367] ; *People* v. *Byers*, 5 Cal.2d 676 [55 P.2d 1177].) The evidence, as a whole, would justify the inference that this stationery was intended for official and not for personal use, and that it was not a gift in the sense contended for. ■ It cannot be held as a matter of law that the use of such stationery in a campaign for reelection is so certainly in the public interest as to constitute an official rather than a private use. Since he used it in his campaign, at the cost of the city, it cannot be said that the respondent derived no personal gain. The argument that such stationery with the respondent's name on it would be useless to others, is not persuasive with respect to the larger quantities specially ordered for campaign purposes. Moreover, whether these articles were taken and used openly, under claim of title and in good faith, is a matter of defense presenting a question of fact which may be raised at the trial. (Pen. Code, § 511; *People* v. *Knott*, 15 Cal.2d 628 [104 P.2d 33, 128 A.L.R. 1367].)

It is next contended that this indictment was returned without reasonable or probable cause in that he was forced to appear and testify under subpoena, thus violating his constitutional right; and that if his own testimony were deleted from the record there would be no competent evidence to constitute reasonable or probable cause.

There was ample evidence to show probable cause, apart from the testimony given by the respondent. ■ At the beginning of his testimony he was told "Mr. Nathanson, you have been subpoenaed here to testify. It is the law of the state if at any time any answer might tend to incriminate you, you can refuse to answer the question." The respondent replied, "I will answer any question." The respondent then gave 18 pages of testimony answering all questions asked of him. While he admitted using the stationery for campaign purposes all of his testimony was in favor of his point of view. It does not appear that he was improperly forced

to testify. He was merely given an opportunity to explain his actions in the matter in question, and he expressed a willingness to do so. It cannot be held that he was not sufficiently advised of his rights under the circumstances, or that any prejudice resulted in the lack of further instructions in that regard. (*McFarland* v. *Superior Court*, 88 Cal.App.2d 153 [198 P.2d 318].)

It is next contended that the district attorney was guilty of gross misconduct in three respects in conducting the proceedings before the grand jury. (1) That through the lips of the city attorney the district attorney advised the grand jurors that the respondent was guilty of embezzlement; (2) that the respondent was subjected to humiliation in that it was inferentially made to appear that he had violated the law by not filing a statement of campaign expenses, that he had conspired to promote gambling in Palm Springs, and that he had paid money to prevent people from going to the polls to vote; and (3) that other campaign literature printed in San Francisco was introduced which had nothing to do with this inquiry.

With respect to the second of these items the respondent was asked whether he had prepared his campaign statement for filing, and he replied that none was necessary. He was asked whether he had paid any person to vote or to refrain from voting, and he replied that he had not. Another witness was asked whether he had ever had any conversation with the respondent in regard to opening up Palm Springs for gambling. The witness replied "No sir." In the third instance, the respondent was asked about certain campaign literature he had used and he testified that he had ordered it printed in San Francisco at his own expense, and that it was not on city stationery. While a part of the matter involved in these two items was immaterial it is not so prejudicial as to be controlling, under established rules.

With respect to the first of these items, the effect of this part of the city attorney's testimony was to express his own opinion that a crime had been committed. In support of his contention that this testimony required the setting aside of the indictment the respondent cites *United States* v. *Wells*, 163 F. 313; *Cassell* v. *State of Texas*, 339 U.S. 282 [70 S.Ct. 629, 94 L.Ed. 839]; *Quinn* v. *United States*, 203 F.2d 20; and *Dong Haw* v. *Superior Court*, 81 Cal.App.2d 153 [183 P.2d 724].

The Cassell and Quinn cases have no factual relationship to

the instant case. In *United States* v. *Wells,* the district attorney, without giving the grand jurors an opportunity to deliberate, told them that he was acting under instructions of the Department of Justice, that there was plenty of evidence submitted, and that he had other evidence to give at the trial which would justify their actions, and directed the foreman to sign the indictment, when the jurors did not know what it contained and did not even know who was being indicted. In the Dong Haw case, the district attorney told the grand jury that the evidence introduced was legally sufficient to support an indictment whereas, in fact, no relevant or competent evidence had been introduced against the defendant. There is no evidence here that the district attorney told the grand jury that the evidence was sufficient to support an indictment, or that he interfered in any way with the deliberations of the grand jury. While some of the testimony given by the city attorney was improper, it did not constitute advice from the district attorney, and there was other relevant and competent evidence which was sufficient to support the indictment. There is nothing in the cited cases which would support the further contention that the court was authorized to set aside the indictment, in the exercise of his discretion, by the receipt of this improper evidence.

Our personal feelings are in sympathy with the action taken by the trial judge. Leaving political motives aside, it would seem that a prosecution of this case ought to be unnecessary. While it cannot be held, as a matter of law, that the ordering and use of this stationery for campaign purposes was not illegal, it was apparently done openly and in good faith and more as a result of ignorance than of fraudulent intent. The circumstances suggest that other and less drastic remedies were available which would be more fair to everyone concerned. However, under the statute and the established rules, we feel compelled to hold that probable cause sufficiently appears and that the motion to set aside the indictment was improperly granted.

The order appealed from is reversed.

Griffin, J., concurred.

Mussell, J., dissented.