[Crim. No. 3159. First Dist., Div. Two. Apr. 16, 1956.]

THE PEOPLE, Appellant, v. HENRY VAN RANDALL, Respondent.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Appellant.

Harmon Skillin and Gerald J. Kilday for Respondent.

KAUFMAN, J.—The People appeal from an order granting a motion to dismiss the indictment under section 995 of the Penal Code. On May 2, 1955, the Grand Jury of the City and County of San Francisco charged respondent Henry Van Randall with a violation of section 182 of the Penal Code, conspiracy to violate section 288 of the Police Code of the aforesaid city and county (maintaining a gambling house). He was also charged with three prior felony convictions. Respondent was arraigned on May 6, and on May 12 made the motion to dismiss, which on May 27, 1955, was granted.

On April 22, 1955, certain San Francisco police officers were sent to the Myers Social Club at 4526 Third Street, San Francisco, where they entered the premises by going through the front door of the establishment, then through two swinging doors, one behind the other, the last one opening into a large room in the rear. The front of the building gave the appearance of a cigar store, but neither cigars nor cigarettes were found therein. In the rear of the building were between 40 and 45 persons seated around three tables. The five men at the last table were engaged in what appeared to the officers to be a game of stud poker. Cards and money were on the table in front of them and $47.25 was on a handkerchief on this table. Officer Murray questioned July Phelan who identified himself as a dealer. He told Murray that the $47.25 was the pot of that particular game, that the money in a plastic box on the table was the house cut from the pot, which was 10 per cent. At another table the dealer identified himself as James Cannon, who stated to the officer that they were playing draw poker. There was $31.70 on this table representing the

pot, the house cut and money from the players. From the position of the cards it appeared to the officer that a draw poker hand was being dealt. At the third table the officer testified it was obvious that a card game was in progress, but he could not determine what type it was. This officer also identified gambling equipment taken in the raid of the establishment. Officer Murray further testified that it was ascertained that the gas and electric services were under the name of Lawrence, that when they paged Lawrence, Van Randall came forward, saying that Lawrence was in Kansas City and had nothing to do with it.

Inspector Frank Ahern, who participated in the raid, testified that tables equipped for gambling were found upstairs. He asked for Van Randall whom he knew to be the owner and was told that he had gone home for a rest. Van Randall's nephew, Johnnie Walker, who lived at the same address, accompanied Ahern on the drive to Van Randall's home. Van Randall was found sleeping on the chesterfield. Ahern awakened him and brought him back to the club. Van Randall had the keys to the house boxes on the tables. He told Ahern that he was the sole owner of the club, that the dealers at each of the tables took a 10 per cent cut of which he took 5 per cent leaving them 5 per cent.

Respondent admitted that the Myers Club had been operating for about six weeks, and prior to that it had been closed for about a year. When asked about the circumstances under which he opened it, he said he just opened it up, that no one told him that he could do so, that it was chartered for a social club. Beyond that he refused to testify on the ground that his answers might incriminate him.

The trial court at the hearing of respondent's motion under section 995, Penal Code, interjected into the case the issue of discriminatory enforcement of the antigambling laws stating that he could take judicial notice of the fact that similar offenses were practiced widespread in San Francisco, that church organizations raised money through ''bingo'' lotteries, and that these affairs were even advertised. Relying on the case of *Yick Wo* v. *Hopkins*, 118 U.S. 356 [6 S.Ct. 1064, 30 L.Ed. 220], he dismissed the indictment because he felt that the failure to prosecute others for similar infractions of the law was a denial of the equal protection of the law as far as this respondent was concerned. The court admitted that the record before the grand jury had contained no evidence showing the existence of widespread gambling by church groups.

Appellant contends that a constitutional question cannot be raised under section 995, Penal Code, and that the trial court may not set aside an indictment on any grounds other than the two named in the statute. Of those two, only the ground of lack of probable cause was urged by respondent at the hearing on the motion. The rule before the 1949 amendment to section 995 which added lack of probable cause as a reason for dismissing an indictment, that the trial court was without jurisdiction to entertain or grant such motion or set aside an indictment or information upon any grounds other than those expressly specified in the section, would still appear to be sound. (See *People* v. *Schmidt,* 64 Cal. 260 [30 P. 814].) At the time that *People* v. *Schmidt, supra,* was decided neither an indictment, nor an information could be set aside for lack of reasonable or probable cause. But the principle of construction, *expressio unius est exclusio alterius* is still applicable, and the motion can therefore be granted only for lack of probable cause or the other specifically enumerated grounds.

 As to what may be considered in determining whether there is reasonable and probable cause to indict a defendant, the test laid down in *People* v. *Platt,* 124 Cal.App.2d 123 [268 P.2d 529], is that an indictment or information should be set aside only if there is no evidence that a crime has been committed or no evidence to connect defendant with such crime. The trial court on such motion may not substitute its judgment as to the weight of the evidence, and will not inquire into the sufficiency of the evidence in support of the information or indictment. (And see *People* v. *Sears,* 124 Cal.App.2d 839 [269 P.2d 683]; *People* v. *Nagle,* 25 Cal.2d 216 [153 P.2d 344].) This court reversed an order setting aside an indictment for lack of reasonable and probable cause in *People* v. *Hopkins,* 101 Cal.App.2d 704 [226 P.2d 74], a case wherein defendant was accused of manslaughter for having assisted a narcotic addict by holding his arm while the addict administered a shot of heroin to himself from which he subsequently died. This court, citing *Greenberg* v. *Superior Court,* 19 Cal. 2d 319, 322 [121 P.2d 713], to the effect that if there is some evidence to support the indictment, the court will not inquire into its sufficiency, but the lack of any evidence establishes that the grand jury has exceeded its authority. The court further noted that section 921 of the Penal Code requires the grand jury to find an indictment "when all the evidence before them, taken together, if unexplained or uncontradicted, would, in their judgment, warrant a conviction by a trial jury."

In *Bompensiero* v. *Superior Court,* 44 Cal.2d 178, 183 [281 P.2d 250], the Supreme Court stated that ''Probable cause is shown if a man of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused. (*People* v. *Nagle,* 25 Cal.2d 216, 222 [153 P.2d 344].) An indictment will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it.'' ▆ Respondent herein admitted that he was the proprietor of the club, there was testimony before the grand jury as to admissions made by him concerning the percentages he shared with the two dealers, there was the testimony of the officers relating the admissions made by the dealers as well as the officers' testimony concerning the types of card games in progress and the paying off of the players by the dealers. None of this evidence was contradicted by respondent before the grand jury. There was therefore some evidence for the grand jury to infer that respondent and his dealers had some form of compact between them designed to violate the ordinance which would be sufficient to hold respondent on a conspiracy charge.

▆ Although appellant argues that a constitutional question may not be raised in this type of proceeding, it is now settled that the legality of the evidence presented to the grand jury may be questioned, for if all of the evidence is the result of an illegal search or seizure the indictment cannot stand. In *Badillo* v. *Superior Court,* 46 Cal.2d 269 [294 P.2d 23], it was held that a defendant has been held to answer without reasonable or probable cause if his commitment is based entirely upon incompetent evidence. The court stated that ''no problem is presented in applying this rule in cases involving searches and seizures in which the facts bearing on the legality of the search or seizure are undisputed and establish as a matter of law that the evidence is or is not admissible. In many cases, however, the evidence before the magistrate bearing on this issue may be in conflict or susceptible of conflicting inferences or consist only of the testimony of prosecution witnesses, and under these circumstances the court in ruling on a motion to set aside the information will frequently not be in a position to make a final determination as to the admissibility of the evidence. Accordingly, the information should not be set aside on the ground that essential evidence was illegally obtained if there is any substantial evidence or applicable presumption to support a contrary conclusion (cita-

tions), and in such cases the ultimate decision on admissibility can be made at the trial on the basis of all of the evidence bearing on the issue (citations). In the absence of evidence to the contrary, it is presumed that the officers acted legally (citation), and if the issue is raised for the first time on a motion to set aside the information, the motion should be denied unless the evidence before the committing magistrate establishes that essential evidence was illegally obtained.''

In the case now before the court, respondent did not raise the issue of illegal search and seizure on the motion to dismiss the indictment, but raises it for the first time on this appeal. Therefore, unless an illegal search and seizure affirmatively appears from the transcript of the grand jury proceedings it must be presumed that the search and seizure was legal, and if in fact it was not, respondent will have an opportunity to prove that fact at the trial. Here, as in *People* v. *Farrara,* 46 Cal.2d 265 [294 P.2d 21], it does not appear whether or not the officers had warrants. There is some evidence from which it might be inferred that Inspector Ahern had reasonable cause to believe that respondent was involved in a conspiracy before he went out to his home with respondent's nephew and brought respondent back to the establishment. There is no evidence to show whether or not respondent went voluntarily with Ahern or whether he had actually been arrested at that point. Since the record does not show that the arrest and search were illegal, the evidence must be held to have been sufficient to warrant an indictment by the grand jury.

Respondent maintains that the indictment should be dismissed because of discriminatory enforcement of the anti-gambling laws in San Francisco, referring to the fact that charities and churches raise money by such illegal methods but are unmolested while the gamblers of respondent's class are prosecuted.

This contention has no merit. Moreover it appears that it is not a question to be raised on a motion to dismiss the indictment, as the law itself is not attacked as unconstitutional but only the manner of its enforcement. Clearly, respondent has not been indicted under a void ordinance. Respondent relies on *Yick Wo* v. *Hopkins,* 118 U.S. 356 [6 S.Ct. 1064, 30 L.Ed. 220], a case in which a San Francisco ordinance was held unconstitutional which fixed no standard by which licenses for laundries were to be granted or withheld except by the will of the Board of Supervisors. It was

proved in that case that licenses were withheld from all Chinese proprietors of laundries. In a later case, *Ah Sin* v. *Wittman*, 198 U.S. 500 [25 S.Ct. 756, 49 L.Ed. 1142], which involved a San Francisco ordinance directed at gambling establishments, appellant relied upon the Yick Wo case, arguing that Chinese operators were discriminated against. The court affirmed the judgment of the lower court, and pointed out that appellant was seeking to set aside a criminal law of the state not on the ground that it was unconstitutional on its face nor discriminatory in tendency and ultimate actual operation as was the ordinance in the Yick Wo case, but it was made so by the manner of its administration. This, it was held, was a matter of proof which must be made out completely. The duty of the court below in passing on the motion herein was to test the evidence before the grand jury for reasonable and probable cause on the basis of the grand jury transcript. Defensive matter or evidence in mitigation which was not before the grand jury can be considered at the trial. (See *People* v. *Nathanson*, 134 Cal.App.2d 43, 47 [284 P.2d 975].)

Appellant maintains that when the contention of unequal enforcement of the laws has been raised as a defense in criminal cases in this state, it has been rejected. (In *People* v. *Montgomery*, 47 Cal.App.2d 1 [117 P.2d 437], it was said that appellant therein argued that ''equal protection should also be extended to any person to enable him to commit a crime on a basis of equality with all other persons.'' The court stated that the remedy for unequal enforcement of the law ''does not lie in the exoneration of the guilty at the expense of society,'' and noted the obvious distinction between extending protection to persons of the Chinese race in pursuance of the business of laundering (the Yick Wo case, *supra*) and extending protection to those engaged in pandering, and that while equal protection will be extended in pursuit of lawful occupations, no one has the right to demand protection in the commission of a crime. The court decided that the only possible extension of the Yick Wo case to a criminal matter would be ''an instance where a person was under prosecution for the commission of some otherwise harmless act which ordinarily had not theretofore been treated as a crime.'' In *People* v. *Darcy*, 59 Cal.App.2d 342, 354 [139 P.2d 118], in which a dissenting opinion argued for the validity of this type of defense, a petition for hearing was denied by the Supreme Court.

Respondent cites *Wade* v. *City & County of San Francisco*, 82 Cal.App.2d 337 [186 P.2d 181], and *People* v. *Gordon*, 105 Cal.App.2d 711 [234 P.2d 287], in reference to discriminatory enforcement. The first of these cases dealt with the alleged discriminatory enforcement of a licensing ordinance concerned with solicitation of magazine subscriptions on the public streets and sidewalks, the second with alleged discriminatory enforcement of the Unfair Trade Practices Act. These cases are similar in principle to the Yick Wo case, and distinguishable from *People* v. *Montgomery* and *People* v. *Darcy, supra*.

In view of the fact that the record of the grand jury proceedings discloses reasonable and probable cause for indicting respondent for conspiracy to violate the ordinance, it was error to grant the motion to set aside the indictment. (See *People* v. *Hopkins, supra*.)

Order reversed.

Nourse, P. J., and Dooling, J., concurred.