[Crim. No. 331.   Fourth Appellate District.—August 17, 1936.]

THE PEOPLE, Respondent, v. GEORGE F. DUKES, Appellant.

Edwin L. Johnson for Appellant.

U. S. Webb, Attorney-General, and James S. Howie, Deputy Attorney-General, for Respondent.

BARNARD, P. J.—The defendant was charged, in separate counts, with the crimes of burglary and petit theft, the latter including a prior conviction of the same offense. It was alleged, respectively, that he entered a house occupied by one G. H. Kemp with intent to commit theft, and that he took therefrom a portable typewriter. He admitted the prior conviction and a jury found him guilty of burglary in the second degree and of petit theft. He was sentenced on both counts, the sentences to run concurrently, and has appealed from the judgment and from an order denying his motion for a new trial.

The following facts appear from the evidence introduced by the prosecution: Kemp operated a service station in Orange County a few miles from the main highway between Los Angeles and San Diego. He lived in a house some 75

or 80 feet from this station, with his wife, his daughter and his son-in-law. Near the front door of the house was an illuminated sign which read "Night service 50c extra." About 5:30 A. M. on April 20, 1936, Kemp was awakened by a sound in the living room of his home. He arose and opened the bedroom door and saw the appellant standing in the living room. When asked what he wanted the appellant replied by asking the way to San Diego, and Kemp told him. As to what next happened Kemp testified: "I closed the door then and started putting on my clothes, and then I heard a noise and I opened the door and he had got the typewriter and the lid on the case had come open and he had went out the door with it and it had fell out and lit on the cement walk." When Kemp came out the second time the outside door to the living room was open, the screen door was closed, the typewriter case lay on the porch floor and the typewriter lay on a cement step just off the porch. This typewriter, which belonged to Kemp's daughter, had been left the night before standing on the floor of the living room on the side farthest from the front door. Kemp asked the appellant what he was doing with the typewriter and received no reply. Kemp's son-in-law then appeared and told the appellant, who had reentered the room, to sit down until the sheriff came. Someone phoned for the sheriff and Kemp got a shotgun and told the appellant he would have to stay there until the officers came. However, the appellant went out to his automobile, which was standing near the service station, and talked to his wife and a man named Kostrubanick, who were in the car. This other man gave Kemp a card which he said contained his address. Shortly thereafter the appellant drove away although Kemp told him to stay as the sheriff would soon be there. The appellant was arrested about 6:45 the same morning on the coast highway near Laguna Beach. When arrested he told the officer that he had not taken the typewriter but that it had fallen out on the porch. He also told the officer that when he took the typewriter he was mistaken and "thought it was his wife's overnight case". The deputy sheriff testified that on the way to the jail he heard the appellant tell his wife "that she didn't have to worry that all she would have to do was to swear that he had knocked at the door and had been told to come in and he had picked up the case by mistake".

The appellant did not take the stand, but Kostrubanick testified that they were riding from Los Angeles to San Diego; that the appellant was driving; that during the night ''we had a couple of beers''; that they stopped at this service station with the intention of asking the way to San Diego; that the appellant got out of the car; that he did not hear the appellant rap at the door but saw him do so; that he heard a voice directing the appellant to ''come in''; that he saw the appellant open the door and walk in; that a minute later he saw a typewriter rolling down the step; and that a second later the appellant came running out and rapped at the door of the car saying ''there is a man coming after me with a gun''. The appellant's wife testified that she was asleep in the car and knew nothing about the matter until she heard the commotion and saw the appellant outside and Kemp there with a shotgun.

The appellant contends the evidence is not sufficient to support the conviction on either count. It is argued that this was a mere trespass at the most, that the appellant entered the house by invitation, that he was drunk at the time, that there was not sufficient proof of the asportation of the typewriter, that the typewriter merely fell out of the house, and that the evidence is not sufficient to show an intent to steal at the time he entered the house.

The only conflict in the evidence is as to whether the appellant was told by someone in the house to ''come in''. There is ample evidence to support the implied finding that no such invitation was extended. There is no evidence that the appellant was drunk, all of the evidence is to the contrary, and even Kostrubanick testified that they had had but two beers during the night. The argument that the typewriter might have been on a chair near the door and that it might have fallen out on the porch is entirely unsupported, the evidence clearly showing that it was on the floor on the opposite side of the room. The only reasonable or possible conclusion is that the appellant picked it up and that the case came open and the typewriter dropped out as he was carrying it across the small porch. While there must be such a carrying away or asportation as to supersede the possession of the owner, such an interference with the owner's possession need be only for an appreciable interval of time, be it ever so short. (*People* v. *Edwards,* 72 Cal.

App. 102 [236 Pac. 944].) Proof of asportation was sufficient in this case.

The question of the intent with which the appellant entered this dwelling was one of fact. There was no direct evidence since the appellant did not testify, but the intent may be drawn from the surrounding circumstances. (Pen. Code, sec. 21.) The appellant argues that the illuminated sign was in itself an invitation to enter the house. While it indicated that night service was available, for a special compensation, and may have indicated that the occupants of the house were willing to be disturbed for that purpose, it cannot be construed as an invitation to enter this private home without further permission. From all of the evidence the jury was entitled to believe that the appellant entered the house without invitation. The fact that he did not leave the house when he obtained the information which he went there to get, according to his companion's testimony, strongly indicates that he entered the house with some other intention. The fact that he picked up the typewriter is some evidence of his real intention. His attempt to get his wife to testify that he had knocked on the door, that he had been told to come in, and that he had picked up the case by mistake, not only confirms the conclusion that he entered the house without invitation but has a material bearing on the question of intent. The surrounding circumstances support the jury's implied finding on this question of fact.

It is next urged that the court erred in giving an instruction on flight, which was in the language of section 1127c of the Penal Code. While the occupants of the house insisted upon the appellant's remaining until the sheriff came, he drove away before the officer's arrival. The most natural thing for an innocent man would have been to remain and attempt to clear up what was, at best, a most suspicious set of circumstances. To drive away, against the protests of the occupants of the house, has some tendency to indicate a consciousness of guilt. Conceding that the instruction might well have been omitted, we cannot hold that it was so entirely unjustified by the evidence as to have been prejudicially erroneous.

It is next contended that the court erred in refusing to give the following instruction:

"You are not to consider or permit yourselves in anywise to be influenced by the fact that the defendant has not seen fit to offer himself as a witness before you. The law entitles him to rely upon such evidence as is given in the case, or upon the failure of the People to prove each and every material element of the charge against him. Therefore, not the slightest presumption of guilt is raised against the defendant by reason of the fact that he has not taken the witness stand; and if, after a full consideration of the testimony and evidence in the case before you, the jury entertain a reasonable doubt of the guilt of the defendant, you must acquit him."

It is argued that the failure to give this instruction practically robbed the appellant of his right to refuse to testify and of his presumption of innocence. Under article I, section 13, of the Constitution, as amended in 1934, and section 1323 of the Penal Code the failure of a defendant to explain or to deny evidence which has been produced against him may be commented upon and may be considered by the court or the jury. In the instant case, the presence of the appellant in this house and the removal by him of the typewriter certainly called for an explanation on his part. He chose not to make any such explanation and under these new provisions such failure might be commented on by counsel and considered by the jury. The instruction, if given, would, in effect, have told the jury not to consider that which the Constitutional amendment authorized it to take into consideration. The instruction offered was too broad, a portion thereof is contrary to what is now the law, and the same was properly refused.

The next point raised is that the court erred in refusing to instruct the jury that the appellant might be convicted of an attempt to commit petit theft. It is argued that the evidence shows merely an attempt and not a completed theft. The appellant took the typewriter into his possession and in fact removed it from the building, and a theft was completed. The fact that the appellant was accidentally prevented from getting away without being detected does not change the situation. There was no evidence justifying the giving of the requested instruction.

The last ground urged is that the court erred in giving an instruction relative to the possession of stolen prop-

erty. This instruction was in the usual form. It is claimed that there is no evidence that the appellant was in possession of the typewriter. The evidence justified the conclusion that the appellant had the typewriter in his possession during the period of time necessary for him to move it across the room and out on the porch. This is only a circumstance tending to show guilt and the jury was so instructed. Again assuming that the instruction was not essential in· this case, the giving of the same was not erroneous and would not justify a reversal of the judgment.

The judgment and order appealed from are affirmed.

Jennings, J., and Griffin, J., *pro tem.,* concurred.