[Crim. No. 1430.   Fourth Dist.   Aug. 7, 1959.]

THE PEOPLE, Respondent, v. CHESTER WILLIAMS BEST, Appellant.

Jack Boggust for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and David B. Allen, Deputy Attorney General, for Respondent.

SHEPARD, J.—Defendant was charged, tried and convicted of a violation of Penal Code, section 424, subdivision 1 (embezzlement by a public officer). He appeals from the judgment of conviction and from the order denying a motion for a new trial.

Defendant did not take the witness stand in his own behalf and no factual material was presented by him to contradict any part of the material prosecution evidence. That evidence thus standing entirely without contradiction shows: that at the time the offense is alleged to have been committed a bench warrant had been issued by the Justice's Court of Calexico in the County of Imperial, State of California, against Paul Ray Russell on account of the failure of said Russell to pay a fine levied by said justice's court pursuant to a judgment of conviction of said Russell for the misdemeanor of drunk driving (violation of Veh. Code, § 502); that said warrant was transmitted to the police department of El Centro of the same county and state; that upon receipt thereof by said police department a police officer of said department did arrest said Russell under authority of said warrant; that said Russell was thereupon taken to police headquarters of El Centro; that the city jail of El Centro was then located at the same address

as the city police headquarters; that the chief of police of El Centro was in charge of all city police activities, including the city jail; that defendant, as a police officer of said city of El Centro, was then and there under assignment of duty from said chief of police to act as desk sergeant in charge of the main office at police headquarters and his duties, among other things, required him to dispatch cars by radio, receive telephone calls, give information, handle court records, bring prisoners to court, keep track of court records, act as court clerk, book prisoners, accept bail money and parking meter fines that came in over the front counter; that in receipt of bail it was his duty to issue a receipt, and when bail was received on a warrant from a court outside El Centro to turn the money and warrant over to a "warrant officer" for logging and transmission to the issuing court; that at the time said Russell was brought in under arrest on said bench warrant said Russell remained in the main office for a time until Russell's partner went to another place to obtain cash for Russell to post the $150 bail required by said warrant; that such money was obtained, was handed to Russell and by him to this defendant as bail, this defendant receipted therefor and said Russell was thereupon released from custody; that by accident or design Russell was never "booked" as a prisoner; that defendant pocketed the money and spent it for his own private use; that the money was never reported or transmitted to the Calexico or any other court; that the defalcation was ultimately discovered and defendant was arrested, tried and convicted as aforesaid.

Defendant first asserts that simple embezzlement was necessarily included in the charge of a violation of Penal Code, section 424, subdivision 1 (embezzlement by a public officer) and that, therefore, the trial court committed prejudicial error in refusing to instruct the jury on the included offense of simple embezzlement. As a part of this contention defendant further asserts that the bail money received by the defendant was not "public money" and was not received or held by the defendant in an "official capacity."

First we will deal with the question of whether or not any bail money was public money. Penal Code, section 426, provides that the phrase "public moneys," as used in the two preceding sections, includes all money received or held by a state, county, district, city or town officer in his official capacity. It will be seen from the uncontradicted facts shown by the evidence in this case that the defendant was "in charge

of'' and assigned to the ''duty of'' receiving and transmitting bail money, and that he was a police officer of the city of El Centro. Penal Code, section 1295, as it read at the time this offense was committed, provides that whenever a defendant has been arrested and booked on a misdemeanor and the amount of the bail does not exceed $1,000, the defendant may deposit with the officer in charge of the jail in which defendant is detained cash in the amount of the bail and be thereupon discharged from custody.

Section 424 was clearly intended by the Legislature to provide a broad salutary means of punishing public officers who betray their public trust by taking for their own use public money being handled by them in their official capacity. To say that a police officer, assigned to the duty of receiving and transmitting bail money who unlawfully takes that money and uses it for his own private purposes, might avoid the consequences of his act by the technical expedient of accidentally or purposefully failing to ''book'' the prisoner would defeat the whole purpose of the legislative intent so clearly shown by the wording of sections 424, 425 and 426. Without suggesting what effect the failure to ''book'' a prisoner might have under some other kinds of situation, we think that under the particular situation here present it was a mere directory incident for the bringing of the prisoner under the control of the central police headquarters, and that defendant was in truth and in fact acting in his ''official capacity'' as an officer of the city of El Centro when he received and receipted for the bail money. Each statute must be construed according to the tenor and intent shown by its terms and purpose. While the term ''jail'' may well be construed for certain other purposes to refer only to that barred and walled space usually found in or near city police headquarters for the more or less lengthy detention of prisoners while awaiting hearing or serving of sentence, we think the broader meaning of a place of confinement of persons held in lawful custody (Webster's International Dictionary) is intended. Here Russell was within the confines of the building housing the city police headquarters and jail, and defendant was ''in charge,'' assigned *inter alia* to the specific duty of receiving bail. To ascribe a more technical meaning is to make a mockery of legislative intent.

It has been repeatedly held that the official character in which the money is received is the true criterion of whether or not it is public money. (*People* v. *Dillon*, 199 Cal. 1 [248 P. 230] ; *People* v. *Moulton*, 116 Cal.App. 552 [2 P.2d 1009] ;

*People* v. *Crosby*, 141 Cal.App.2d 172, 175 [1] [296 P.2d 438] ; *People* v. *Griffin*, 170 Cal.App.2d 358, 363 [7] [338 P.2d 949].) The case of *Rodman* v. *Superior Court*, 13 Cal. 2d 262 [89 P.2d 109], cited by defendant, is not helpful in this respect for it merely holds that bail money deposited in defendant's behalf by a third person may not be applied in satisfaction of defendant's fine. Other cases cited by the defendant are even less analogous.

Next defendant contends that the trial court was in error in failing to give certain instructions under the direction of which defendant might have been found guilty of simple embezzlement, which he contends was an included offense. The evidence was clear and uncontradicted that defendant's actions were those of a public officer receiving public monies in his official capacity, and that he unlawfully appropriated the same to his own use. Nothing was left open to factual interpretation by the jury. He was either guilty of the offense charged or not guilty.

Thus, as was said in *People* v. *Carmen*, 36 Cal.2d 768, 772 [1] [228 P.2d 281] :

"It is a settled rule that jury instructions must be responsive to the issues. The issues in a criminal case are determined by the evidence."

In *People* v. *Cota*, 53 Cal.App.2d 455, 456 [1] [127 P.2d 1010], this court said:

"It is well established in this state that it is proper to refuse an instruction as to a lesser offense or degree included in the offense charged where the evidence warrants a conviction, if at all, only for the higher offense or degree."

Abstract instructions, where there is no evidence to support such instructions, are properly refused. (*People* v. *Jackson*, 106 Cal.App.2d 114, 124 [12] [234 P.2d 766].)

Refusing a defense instruction is proper where the evidence, if believed at all, could lead to no other rational conclusion than guilt of the higher offense. (*People* v. *Madison*, 3 Cal.2d 668, 676 [4] [46 P.2d 159] ; *People* v. *McCoy*, 25 Cal. 2d 177, 188 [9] [153 P.2d 315] ; *People* v. *Dorman*, 28 Cal.2d 846, 853 [3] [172 P.2d 686] ; *People* v. *Wolfe*, 42 Cal.2d 663, 673 [5] [268 P.2d 475] ; *People* v. *Dukes*, 16 Cal.App.2d 105, 110 [5] [60 P.2d 197] ; *People* v. *Lionberger*, 19 Cal.App.2d 284, 288 [4] [65 P.2d 99].)

Defendant complains that certain other instructions requested by him were refused. An examination and comparison of these instructions shows that they were merely repeti-

tive in different language of the law already conveyed by the court to the jury in other instructions. Repetitious instructions are properly refused. (*People* v. *Geibel,* 93 Cal.App.2d 147, 176 [21] [208 P.2d 743].)

From a careful examination of the entire record it appears that the cause was fairly tried and the jury adequately instructed.

The judgment and order appealed from are affirmed.

Mussell, Acting P. J., concurred.