[Crim. No. 19240. First Dist., Div. Three. Dec. 29, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN R. WALL, Defendant and Appellant.

**COUNSEL**

Alan A. Dressler for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney

General, William D. Stein and Eugene W. Kaster, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**FEINBERG, J.**—Appellant was convicted of a violation of count I, fraudulent appropriation by a public officer of property in his possession or control by virtue of his trust (Pen. Code, § 504), count II, unauthorized appropriation to his own use of public moneys by a public officer (Pen. Code, § 424, subd. 1), and count III, failure to keep and pay over public moneys by an officer (Pen. Code, § 425).[1]

Appellant was sentenced on count II. Sentences imposed on counts I and III were stayed, the stay to become permanent at such time as the sentence on count II became final.

*The Facts*

During the period in question, appellant was employed by the City and County of San Francisco as a parking meter collector. That is to say, he was assigned to empty parking meters in a given area several times a week and at the end of each working day, 5 p.m.,[2] return the coins retrieved to a designated room in city hall. The collection area assigned was changed on a monthly basis.

In order to collect the coins, certain impedimenta were necessary. Thus, keys were necessary to unlock the meter; a funnel was used to catch the drop of the coins from the opened meter and channel them into a canister. The canister was on a hand cart which would be wheeled from meter to meter as the collection progressed. Finally, a van was used to transport the collector and his gear to and from his assigned route.

At the beginning of each work day, the equipment (van, keys, funnel, etc.) would be assigned to a collector and when the collector ended his

---

[1]Hereafter, all section references are to the Penal Code.

[2]In fact, the duties of the job were so less than onerous that the collectors regularly completed their collections and returned before noon, at which time they left to pursue their private affairs.

shift and returned with the money, he was required to return the equipment.

The case against appellant rests primarily upon the testimony of a police officer who testified as follows:

Sometime in mid-March 1978, between 6 and 6:15 p.m., he observed a person whom he identified as appellant, at a parking meter on Sutter Street with a funnel, canister and cart. He saw appellant make a motion as though to open the meter. Within a few moments, he saw appellant, move the cart with the canister to the next meter in line.

While there is other evidence that raises a suspicion that appellant may have been unlawfully taking parking meter moneys, our reading of the record convinces us that, absent the police officer's testimony that we have summarized, there is insufficient evidence, as a matter of law, to convict appellant of any of the charges.

1. *Does the Evidence Show a Violation of Section 504?*

■ Appellant asserts that under the evidence, as a matter of law, he cannot be guilty of a violation of section 504 because, at the time of the taking of the money, March 1978, the money was not "in his possession or under his control by virtue of his trust."

Casting the People's evidence in its strongest light, it shows that appellant, using official equipment, took public moneys from a parking meter. But the prosecution's case also shows that when appellant took the money, he was not acting in the performance of his duties, for two reasons. First, the taking was one hour *after* the work shift ended and appellant was not authorized to collect at that time. Second, in the month of March 1978, appellant was not assigned to collect on Sutter Street *at any time.* His assignment was for a different area that did *not* include Sutter Street.

Section 504 provides: "Every officer of this state, or of any county, city, city and county, or other municipal corporation or subdivision thereof, and every deputy, clerk, or servant of any such officer and every officer, director, trustee, clerk, servant, or agent of any association, society, or corporation (public or private), who fraudulently appropriates to any use or purpose not in the due and lawful execution of his

trust, any property which he has in his possession, or under his control by virtue of his trust, or secretes it with a fraudulent intent to appropriate it to such use or purpose, is guilty of embezzlement."

Respondent seems to concede that appellant did not have "possession" of the meter money "by virtue of his trust" but argues that appellant had "control" of the money "by virtue of his trust." The argument runs as follows: By reason of his employment as a meter collector, appellant had access to the equipment necessary to empty a parking meter—the keys, the funnel, the canister. He then took that equipment and emptied the meter. Thus, appellant had "control" of the meter money because he had control by virtue of his trust of the instrumentalities by which he came into possession of the meter money.

Assuming that respondent is correct in that, if appellant had in the course of his duties somehow secured and secreted the various items needed to empty the meter, that would constitute the meter money as being "under his control by reason of his trust," there is not a scintilla of evidence to indicate *how* appellant secured the equipment.[3]

Section 504 is an embezzlement section. The burden was upon the prosecution to prove that appellant had the meter money "under his control by virtue of his trust." On respondent's own theory, there is a failure of proof that appellant came into possession of the equipment used to empty the meter "by virtue of his trust."

In this connection, respondent's reliance upon *People* v. *Knott* (1940) 15 Cal.2d 628 [104 P.2d 33, 128 A.L.R. 1367] is misplaced. In *Knott*, a county auditor was prosecuted and convicted of violations of section 504. It was the auditor's function to draw warrants upon the county treasury in payment of the obligations of the county. The court held that although it was the county treasurer who was legally in possession of the county money, it was the duty of the county treasurer to pay warrants drawn by the auditor regular on their face. The auditor issued a number of warrants on false claims and took the funds secured thereby from the county treasurer for her own use. The court held that within the meaning of section 504, the auditor had "control" of the

---

[3]For example, respondent hypothesizes that appellant instead of returning his keys after a collection retained them. There is absolutely no evidence which supports such a conclusion either directly or inferentially. The only evidence on the point is appellant's testimony that he *never* failed to turn in his keys when he returned from a collection.

county money. But, in *Knott*, there was no issue as to how the auditor secured the blank warrants she was executing, i.e., whether she had control "by virtue of her trust." On the contrary, it was the auditor's function to draw warrants and she was drawing the fraudulent warrants in the course of her duties. Thus, she had control "by virtue of her trust."

If one draws an analogy between the auditor and the warrants in *Knott*, and the collector and the equipment in the case at bench, unlike *Knott*, appellant was not acting in the performance of his duties at the time in question and there is no evidence as to how he secured the equipment.

We conclude that, as a matter of law, the evidence is not sufficient to support a conviction of section 504. The judgment as to this charge must be reversed with directions to dismiss the count. (*Burks* v. *United States* (1978) 437 U.S. 1 [57 L.Ed.2d 1, 98 S.Ct. 2141]; *In re Johnny G.* (1979) 25 Cal.3d 543 [159 Cal.Rptr. 180, 601 P.2d 196].)

2. *Does the Evidence Support the Conviction of a Violation of Section 424, Subdivision 1 and Section 425?*

Section 424, subdivision 1 provides: "Each officer of this state, or of any county, city, town, or district of this state, and every other person charged with the receipt, safekeeping, transfer, or disbursement of public moneys, who either: [¶] 1. Without authority of law, appropriates the same, or any portion thereof, to his own use, or to the use of another; or, . . ."

Section 425 provides: "Every officer charged with the receipt, safe keeping, or disbursement of public moneys, who neglects or fails to keep and pay over the same in the manner prescribed by law, is guilty of a felony."

■ Appellant argues that these two sections apply only if the public moneys misappropriated came into the possession of the "officer" in the officer's "official capacity." Because appellant was not acting in his "official capacity" when he emptied the meter, he cannot be convicted under these sections. Of course, this is the same argument he makes, and with which we agreed, relative to the conviction under section 504.

Here, however, we disagree. We base our view upon the language of sections 424, subdivision 1 and 425 and the decisional law.

Unlike section 504, there is no language in sections 424 or 425 requiring that the public moneys misappropriated come into the possession of the misappropriator "in his official capacity." Appellant suggests that we read such a requirement into these sections because the Legislature so intended. He deduces that intention because, he says, these sections had their genesis in common law embezzlement. Common law embezzlement required a fraudulent conversion of property by one who had lawful possession thereof. Appellant then argues that the Legislature in enacting sections 424 and 425 "eliminated the concept of 'fraudulent conversion'.... However, the Legislature did not eliminate the requirement of rightful or lawful possession of the money."

But how had the Legislature "eliminated the concept of fraudulent conversion" in the sections in question? Obviously by not writing it into the law. But did not the Legislature equally eliminate "the requirement of rightful or lawful possession of the money" when it failed to write such a requirement into sections 424 and 425?

Thus, if one compares sections 503 and 504, which in substance define and proscribe the common law crime of embezzlement with sections 424 and 425, all four of which sections were enacted in 1872 in virtually the same language as appears today, it leaps to the eye that the Legislature eliminated *both* the requirement of a "fraudulent appropriation" and "lawful possession" from the latter two sections.

Further, section 426 defines "public moneys" as used in sections 424 and 425 as moneys "belonging to the state" or any subdivision thereof, "and all moneys...received or held by...[public] officers *in their official capacity.*" (Italics added.) Obviously, when the Legislature intended to limit the penal liability of a public officer under sections 424 and 425 to an act relating to something done "in his official capacity," it did so explicitly.

The decisional law supports our view. In *People* v. *Dillon* (1926) 199 Cal.1 [248 P. 230], the court, in affirming a conviction under section 424, subdivisions 1 and 2, compared section 424 with section 504 and wrote: "That it was not the purpose of the framers of section 424...to incorporate or adopt, by implication or otherwise, the elements essential

to constitute embezzlement as defined by section 504, is made manifest by the context of section 424. A number of acts therein described as felonies do not *possess a single element of the statutory definition of embezzlement.* In fact, considered as unrelated acts, many of them bear not the slightest analogy to acts ordinarily regarded as elements essential to constitute embezzlement." (At pp. 9-10, italics added; that § 424 is not an embezzlement statute, see also *People* v. *Battin* (1978) 77 Cal. App.3d 635, 658 [143 Cal.Rptr. 731, 95 A.L.R.3d 248].)

It is true that in *People* v. *Best* (1959) 172 Cal.App.2d 692 [342 P.2d 314], a conviction under section 424, subdivision 1, the court said that section 424 was intended to punish "public officers who betray their public trust by taking for their own use public money being handled by them in their official capacity." (At p. 695.) We believe the Legislature intended that and more.

We hold that section 424, subdivision 1 and section 425 were intended to punish those charged with the receipt and transfer of moneys belonging to the state or a subdivision thereof and who misappropriate such moneys when there is a nexus between the moneys they are charged with and the moneys misappropriated.

That nexus exists. Appellant was a parking meter collector charged with the receipt and transfer of parking meter moneys, moneys belonging to the City and County of San Francisco and it was parking meter moneys that he misappropriated, using the very instrumentalities of his occupation to gain possession thereof.

We now dispose of appellant's remaining assertions of error.

As to the alleged error in failing to instruct, our reversal of the conviction under section 504 and our affirmance of the convictions under section 424, subdivision 1 and section 425 dispose of appellant's contention in this regard.

With regard to appellant's argument that he did not receive effective assistance of counsel at his trial, we have examined the record and it does not appear to us therefrom that there was a withdrawal of a potentially meritorious defense or that the performance of defense trial counsel was less than that of the ordinarily prudent lawyer. (*People* v. *Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859].)

Finally, the prosecution offered and the court admitted in evidence appellant's bank book, over appellant's objection. Appellant claimed the admission is reversible error.

In our view, the bank book was relevant and thus properly admitted into evidence.

The judgment is reversed as to count I (§ 504) and the trial court is directed to dismiss said count; the judgment is affirmed as to counts II (§ 424, subd. 1) and count III (§ 425).

White, P. J., and Scott, J., concurred.