[No. G004676. Fourth Dist., Div. Three. June 8, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
LAVARRO DIAMOND, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II and III.

## COUNSEL

Robert Rabe, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Peter Quon, Jr., and Holly D. Wilkens, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

SCOVILLE, P. J.—Defendant appeals a judgment of conviction after a retrial on charges of: I) "asking for or receiving bribe by public employee" (Pen. Code, § 68); II) "removal or secreting by government officer of public records" (Gov. Code, § 6200); III) "misappropriation of public money" (Pen. Code, § 424, subd. 1); and IV) embezzlement (Pen. Code, § 504).[2]

---

[2] After the first trial this court reversed defendant's conviction on all charges based on the erroneous admission of certain evidence. (*People* v. *Diamond* (May 15, 1986) G000801 [nonpub. opn.].)

Defendant's Penal Code section 1118.1 motion was granted as to count III, the misappropriation of public funds charge. The jury found defendant guilty on counts I, II and IV.

## FACTS

Defendant was a Deputy Clerk I assigned to the counter in the traffic department of Orange County Municipal Court, Central District, in Santa Ana. Francisco Rodriguez presented a traffic citation to defendant who was manning the traffic counter. After he discovered that Rodriguez did not speak English, defendant requested Martha Arizaga to assist him by providing Spanish-English translation services. Arizaga was also a Deputy Clerk I, but the day in question was her second day on the job.

Through Arizaga's translation defendant told Rodriguez that "he had a warrant for a hundred and sixty-four fifty [$164.50] outstanding." Rodriguez said he needed an extension, and defendant said to get an extension it would be necessary for Rodriguez "to go to court to see the judge." Rodriguez said he did not want to go to court, he just wanted to pay the citation, but he only had $60. Defendant said " 'If he will give me the $60, I could recall the warrant for him.' " Arizaga translated defendant's statement into Spanish for Rodriguez. Rodriguez said " 'Can he really do that?' " and defendant replied that he could. Rodriguez handed defendant $60. Defendant took the money, folded it and put it in his pocket.

Defendant told Arizaga to stamp the abstract of the warrant "recalled." Arizaga stamped the pink copy of the warrant. Defendant said " 'No, not that one. The green one.' " Arizaga stamped the green copy of the warrant, and, at defendant's direction, placed it in the "data input basket." Defendant then gave Rodriguez the yellow "violator's" copy of the traffic citation, the original white copy of the citation and the pink original copy of the warrant. He told Rodriguez to take these documents and destroy them, and "never bring them back to the office."[3]

Arizaga reported defendant's actions to her supervisor. Defendant was arrested some time later.

Defendant, testifying on his own behalf, told a different story. He stated he had Arizaga tell Rodriguez a warrant had been issued on his traffic citation and if Rodriguez wanted an extension to pay bail he would have to

---

[3] Rodriguez did not destroy the copies of the citation and warrant. Later when police officers came to his house to question him about the incident, he gave them the papers defendant had given him.

see a judge. He testified he was called away to answer the telephone,[4] and while he was on the phone he saw Arizaga "handling some stamps." Defendant said he returned to the counter and discovered that Arizaga had stamped the pink copy of the warrant "with a . . . warrant recall stamp." He asked what she was doing and Arizaga replied, " 'He decided to pay the citation.' " Defendant said he told her to stamp the green copy, and returned to the telephone to resume his conversation. He denied ever accepting $60 from Rodriguez or handing him any documents from the court file respecting his citation and warrant.

## DISCUSSION

## I

Defendant contends he could not be convicted of both embezzlement and bribery based on the facts proved in this case. We agree. The property which defendant was accused of embezzling is the same $60 he was accused of receiving as a bribe. The question then is whether a bribery payment received by a public officer can also be embezzled by him in violation of Penal Code section 504. The $60 defendant pocketed in exchange for fixing Rodriguez's ticket was not "property which he [had] in his possession or under his control by *virtue of his trust* . . . ." (Pen. Code, § 504; italics added.) In fact, the $60 was property he had in his possession in *breach* of his trust.

*People* v. *Wall* (1980) 114 Cal.App.3d 15 [170 Cal.Rptr. 522] involves an analogous situation. There the defendant, a city parking meter collector, was seen by a police officer using official equipment to remove money from parking meters after the defendant's normal working hours in an area to which he had not been assigned. Based on that evidence he was convicted, among other things, of embezzlement as defined in Penal Code section 504. The appellate court held, as a matter of law, the evidence was insufficient to support the embezzlement conviction because the evidence did not show he obtained the money " 'by virtue of his trust.' " (*Id.,* at p. 19.) He was not on duty at the time of the theft, and the evidence did not show how defendant secured the necessary equipment to open the meters.

In the case before us defendant was on duty at the time he took the $60 from Rodriguez, but his supervisor testified that clerks in defendant's position were not authorized to accept payments from violators, and all payments were required to be made through the cashier. In addition, Rodri-

---

[4] Both Rodriguez and Arizaga testified defendant never left the counter during the incident in question.

guez had no intention or expectation that the $60 would end up in the public coffers. He intended the money to go into defendant's pocket to insure defendant's promised illegal act.

■ Several cases defining "public moneys" under the Penal Code sections punishing misappropriation of same are instructive. In *People* v. *Best* (1959) 172 Cal.App.2d 692 [342 P.2d 314], bail money was paid by a prisoner, while in a building housing the city police headquarters and the jail, to a police officer in charge of, and assigned to the duty of, receiving and transmitting bail money. The police officer did not book the arrestee, as his duties required. The arrestee was released from custody and the police officer pocketed the bail money. The court concluded the bail money was "public money" stressing that the police officer was " 'in charge of' and assigned to the 'duty of' receiving and transmitting bail money . . . ." (*Id.,* at pp. 694-695.) The court held that the official character in which the money was received was the true criterion of whether or not it should be considered public money. (*Id.,* at p. 695.)

In *People* v. *Griffin* (1959) 170 Cal.App.2d 358 [338 P.2d 949], the defendant was a deputy municipal court clerk who was authorized to receive bail money sent by mail for traffic offenses. In numerous cases the clerk received bail money but failed to deliver it to the court as required. The defendant argued on appeal that the money was not "public money" because there had been no order of forfeiture in any of the cases and the money belonged to the persons who deposited it. The court disagreed. The money was sent into court in full expectation it would be accepted as payment of bail. The defendant was authorized to receive such money in her official capacity. The court noted "[t]he official character in which moneys are received or held is the proper criterion of whether or not they are 'public moneys' under said section 424." (*Id.,* at p. 363.)

■ In the case before us, the $60 did not come into defendant's possession while he was acting in his official capacity. Although he was officially on duty, he had no authority to accept ticket or bail payments by violators, and he was in fact accepting a bribe to fix a ticket. Hence he did not come into possession of the money by virtue of his trust within the meaning of Penal Code section 504.

*People* v. *Floyd* (1926) 78 Cal.App. 11 [247 P. 917] involved the prosecution of a city recorder for embezzling funds collected for violations of the California Vehicle Act. Instead of paying moneys collected into the city treasury, the defendant fraudulently appropriated the moneys in violation of Penal Code section 504. In *Floyd,* however, the defendant had the responsibility of collecting fines for violations of the then California Vehicle

Act and received the money by virtue of his trust in that he had the authority to handle the public money as part of his official duties.

In the cases cited, members of the public sending in money to pay bail, fines or other legitimate public purposes have the expectation that those funds will be treated properly by public officials receiving them in an official capacity. Under such circumstances the money is deemed public money and subject to misappropriation or embezzlement by the public officer. However, where, as here, a bribe is offered by a member of the public the reasons for the rationale disappear. Acceptance of the bribe is a crime in and of itself. The money need not be deemed public money to support a criminal charge. And conceptually, money accepted as a bribe cannot be contraband and public moneys at the same time.

Respondent relies on *People* v. *Vallerga* (1977) 67 Cal.App.3d 847 [136 Cal.Rptr. 429]. Vallerga, while Assessor for Orange County, allowed private use of county facilities and equipment and personally received money in exchange. He was charged with wilful refusal to pay to the County Treasurer money received under a duty imposed by law to pay over same. (Pen. Code, § 424, subd. 7.) In upholding his conviction, the court relied on Labor Code section 2860 which provides, "Everything which an employee acquires by virtue of his employment . . . belongs to the employer, whether acquired lawfully or unlawfully, or during or after the expiration of the term of his employment." *Vallerga* is inapposite. It did not involve a bribe nor do any of the cases cited under the Labor Code section.

We conclude defendant could not be convicted of both bribery and embezzlement. ■ However, we disagree with defendant's contention the judgment must be reversed as to both convictions. Reversal of both would be mandated only where it is impossible to determine what verdict the jury would have returned if properly instructed. (See *People* v. *Campbell* (1976) 63 Cal.App.3d 599, 614 [133 Cal.Rptr. 815]; *People* v. *Perez* (1974) 40 Cal.App.3d 795, 800-801 [115 Cal.Rptr. 405]; cf. *People* v. *Jaramillo* (1976) 16 Cal.3d 752, 760 [129 Cal.Rptr. 306, 548 P.2d 706].)

Here the evidence before the jury proved a bribe and nothing more. We have determined, as a matter of law, on the facts before us a bribe payment cannot be the subject of an embezzlement conviction. If the jury were so instructed, they would have returned a guilty verdict only as to the bribery count. Under the circumstances we need only reverse the judgment as to the embezzlement count.

In light of our determination we need not address defendant's other challenges to the embezzlement count.

II, III\*

. . . . . . . . . . . . . . . . . . . . . . .

The judgment is reversed as to count IV, the embezzlement count. In all other respects the judgment is affirmed.

Crosby, J., and Wallin, J., concurred.

---

\*See footnote 1, *ante,* page 1305.