[Crim. No. 38024. Second Dist., Div. Three. Mar. 31, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
ARVOCHA YVONNE CARTER, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Therene Powell, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and William R. Pounders, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

KLEIN, P. J.—Arvocha Yvonne Carter appeals from a judgment (order granting probation) entered after she was convicted in a nonjury trial of violating Penal Code sections 664, 4574.[1] She contends: "I. Attempting to bring an inoperable revolver into a sheriff's station does not constitute an attempt to violate Penal Code section 4574. II. The trial court committed reversible error by admitting pretrial statements of appellant which were obtained in violation of *Miranda* v. *Arizona*

---

[1]Section 4574 of the Penal Code provides in part as follows: "(a) Except when otherwise authorized by law ... any person, who knowingly brings or sends into ... any state prison ... or any jail or any county road camp in this state, or within the grounds belonging or adjacent to any such institution, any firearms, deadly weapons, or explosives ... is guilty of a felony ...."

(1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]."

The Los Angeles County sheriff's station in Lynwood contains a block of cells for detention of persons pending their transportation to court or to the central jail, and a block of cells for incarcerated prisoners performing duties as trustees.

On November 28, 1979, appellant came to the station counter and told Officer Lee Edwards that she wanted to visit trustee Willie Graham. After taking personal information and advising her of visiting procedures, he told her that "all packages coming into the jail would be searched." She replied "okay." He also advised her that she did not have to submit to the search if she wished to abandon her request for a visit. He then asked to see her purse. She handed it to him. He looked into it and saw five .22 caliber bullets.

He also noticed what appeared to be the butt of a gun "coming out" of the waistband of her pants, under her sweater. He asked her to step behind the counter and she did so. Officer Kathy Wade told her that it was a crime to bring a gun into the facility and asked whether she had a gun. She replied, "'Yes,'" raised her sweater, and reached for the gun. Officer Wade took the gun, a .22 caliber RG2.

Officer Edwards, who had not tested the weapon, testified that in his opinion it was inoperable because the hammer would not strike the firing pin. Officer William Neumann, who had tested the gun, testified its hammer and firing pin were functional. Both officers agreed that the fact the cylinder was loose did not render the gun inoperable.

The trial court found that the sheriff's station included a jail, and expressed its belief that the operability of the gun was not a "controlling factor for [section 4574]."

■ In contending that the blocks of cells in the sheriff's station do not constitute a jail within the meaning of section 4574 of the Penal Code, appellant asserts that one block was merely "holding cells" for temporary detention of persons *before* they were sent to jail, and the other block did not function primarily as a place of incarceration of prisoners in that the trustees were merely housed therein "as a matter of administrative convenience." Appellant's semantic argument is without merit. As stated in *People* v. *Best* (1959) 172 Cal.App.2d 692, 695

[342 P.2d 314], a jail is a place of confinement of persons held in lawful custody. Here, as the trial court found, the subject sheriff's facility was used for both temporary custody and for long term custody of trustee prisoners.[2]

■ Regarding operability of the firearm, the trial court properly concluded that operability was not a requirement for violation of Penal Code section 4574. (Cf. *People* v. *Thompson* (1977) 72 Cal.App.3d 1, 3-5 [139 Cal.Rptr. 800]; *People* v. *Favalora* (1974) 42 Cal.App.3d 988, 993-995 [117 Cal.Rptr. 291]; see also *People* v. *Tallmadge* (1980) 103 Cal.App.3d 980, 987-988 [163 Cal.Rptr. 372]; *People* v. *Williams* (1976) 56 Cal.App.3d 253, 255 [128 Cal.Rptr. 408].) Appellant's reliance on *People* v. *Gaines* (1980) 103 Cal.App.3d 89 [162 Cal.Rptr. 827], construing Penal Code section 12022.5 (firearm use enhancement) and *People* v. *Woodard* (1979) 23 Cal.3d 329 [152 Cal.Rptr. 536, 590 P.2d 391], construing Penal Code section 12021 (possession of concealed firearm by felon) to require an operable firearm is misplaced. The rationale of those cases, even if assumed appropriate to the offenses there being considered,[3] is quite inapposite here.

The clear intent of the Legislature in enacting Penal Code section 4574 was to maintain the safety and security of this state's jails and road camps by totally proscribing the introduction therein of any firearms, deadly weapons or explosives. Here, as with the statute considered in *People* v. *Jackson* (1979) 92 Cal.App.3d 899, 902 [155 Cal.Rptr. 305], "In our view the legislative intent would be frustrated by the 'inoperability defense' proposed by appellant."

---

[2]Appellant claims that the Lynwood station did not come within the definition of "common jails" in section 4000 of the Penal Code. In turn, respondent notes that said section does not purport to define the term, "jail," for all purposes. (See *People* v. *Best, supra*, 172 Cal.App.2d at p. 695.) In any event, section 4000 includes within the definition of common jails: "4. For the confinement of persons sentenced to imprisonment therein upon a conviction for crime." At trial, it was established that the trustees herein were "sentenced prisoners, convicts."

[3]As respondent notes, *Gaines* and *Woodard* each cited *People* v. *Jackson* (1968) 266 Cal.App.2d 341 [72 Cal.Rptr. 162] for its conclusion. Subsequent to *Jackson*, the Legislature amended Penal Code section 12001 to provide that "'Pistol,' 'revolver,' and 'firearm capable of being concealed upon the person' as used in Sections 12021, 12072, and 12073 include the frame or receiver of any such weapon." Thereafter, *People* v. *Favalora (supra*, 42 Cal.App.3d 988, 994) held that said amendment "nullified the effect of *Jackson* [266 Cal.App.2d 431] by codifying an intent contrary to that decision." *People* v. *Thompson, supra*, 72 Cal.App.3d at pages 4-5, agreed with *Favarola's* conclusions, noted that commentators agreed with it, and expressly held that the purpose of the legislation was "to nullify the *Jackson* rule."

It requires no imagination to picture the perils created by escaping convicts who are armed with what appear to be functional firearms, or the bloody riots that often ensue when such efforts prove only partially successful. Manifestly we cannot subject other inmates, their visitors or the guardians of our places of confinement, to risks created by gun wielding prisoners. It would, therefore, be a most unreasonable interpretation of section 4574 that would declare a detected smuggler immune from prosecution if there existed a flaw in the weapon's firepower.[4]

■ Appellant's contention that she was denied her rights under *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974] is wholly meritless. As the trial court found, she came to the sheriff's station voluntarily to accomplish her own purpose of visiting a trustee-prisoner. When the officer saw a bulge in her waistband and asked her to step behind the counter, the matter was at the investigative stage only. Appellant herself testified that the officer merely asked her to come behind the counter, and did not order her to do so or take custody of her. The officers had every right to conduct the reasonable noncustodial investigation that lead to the discovery of appellant's gun and none of the concerns that gave rise to the rules enunciated in *Miranda* v. *Arizona, supra*, were present here.[5]

The judgment (order granting probation) is affirmed.

Cobey, J., and Watai, J.,* concurred.

A petition for a rehearing was denied April 23, 1981, and appellant's petition for a hearing by the Supreme Court was denied June 24, 1981.

---

[4]Here appellant presented no defense but it is clear from her statements to the arresting officer that if there were, in fact, any defect in the revolver she had not been aware of it.

[5]Appellant's subsequent admissions to Officer Neumann three days later were made after she had been fully advised of her *Miranda* rights.

*Assigned by the Chairperson of the Judicial Council.