[No. C030812. Third Dist. Aug. 29, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
APRIL LYNNE GRAYSON et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

---

\*Under California Rules of Court, rules 976(b) and 976.1, only the first four introductory paragraphs of the opinion, the "Factual and Procedural History," part IIA of the "Discussion" and the "Disposition" are certified for publication.

480

**COUNSEL**

Michael Satris, under appointment by the Court of Appeal, for Defendant and Appellant April Lynne Grayson.

Katherine Hart, under appointment by the Court of Appeal, for Defendant and Appellant Joseph Bo Lewis.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, W. Scott Thorpe and Robert M. Morgester, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HULL, J.**—Defendants April Lynne Grayson and Joseph Bo Lewis were charged with a variety of offenses involving two young women, 19-year-old Shadell and 14-year-old Corrine F. (Corrine). The jury convicted Grayson of several crimes involving Shadell, namely, kidnapping (Pen. Code, § 207 [further section references are to the Penal Code unless otherwise indicated]), false imprisonment (§ 236), procuring for purposes of prostitution (§ 266a), and pandering (§ 266i).[1] The jury found charged firearm enhancements to be true. (§§ 12022.5, subd. (a), 12022, subd. (a)(1), 12022.53, subd. (b).) The jury also convicted Grayson of bringing an explosive into jail (§ 4574).

The jury acquitted both defendants of kidnapping Corrine but convicted them of procuring Corrine for purposes of prostitution (§ 266a) and pimping (§ 266h). The jury also convicted defendant Lewis of one count of lewd and lascivious conduct (§ 288, subd. (c)), and the court found charged priors to be true.

The trial court sentenced Grayson to an aggregate prison term of 20 years 8 months, and imposed an aggregate sentence of 50 years to life on defendant Lewis.[2]

On appeal, defendants raise a multitude of individual and joint contentions, asserting: (1) evidence was erroneously admitted at trial, (2) there was

---

[1] The jury was unable to reach verdicts on the same charges against defendant Lewis.

[2] Defendant Grayson's sentence reflects a principal term of 15 years, consisting of the midterm of five years for kidnapping, plus an additional 10 years for the related firearm enhancement (§ 12022.53, subd. (b)). Consecutive terms were added for the following offenses and their associated enhancements: two years eight months for pandering, two years for pimping, and one year for the explosives charge. Sentences for two counts of procuring and one count of false imprisonment were stayed pursuant to section 654. The abstract of judgment erroneously denominates the false imprisonment conviction as a conviction for dissuading a witness. We shall order the abstract corrected.

The sentence imposed on defendant Lewis consisted of two terms of 25 years to life under the three strikes law, with a third life term stayed pursuant to section 654.

insufficient evidence to support several of the convictions, (3) the court did not give adequate instructions, (4) the jury erred in convicting Grayson of both greater and lesser offenses, (5) *Marsden* error occurred,[3] and (6) the court violated section 654 in sentencing Grayson. Only this last contention has merit. We modify the sentence accordingly and otherwise affirm.

## FACTS AND PROCEDURAL HISTORY

Defendants were driving from Southern California to Sacramento with a woman named Lucille when they met 14-year-old Corrine, a runaway, outside a restaurant. They asked Corrine if she would like to accompany them, and Corrine agreed.

Defendants spoke to Corrine about working as a prostitute, and they instructed her how to dress, how to behave, and how much to charge. Defendants advised Corrine that she should tell people she was 19, and they said they would get identification for her.

When the group arrived in Sacramento, they went to a grocery store, where they met 19-year-old Shadell. Shadell's boyfriend had deserted her at the store, and Shadell was crying and upset. Defendants offered to help by giving her a ride home. Rather than taking her home, defendants brought her with them to a motel, where they rented a room. Shadell asked about her ride home, but her question went unanswered.

Defendant Lewis instructed defendant Grayson to get Corrine "ready because somebody likes her." While Corrine took a shower and Lewis was away from the motel, Grayson told Shadell that since she had gotten into the car with them, Shadell had chosen their lifestyle, and would work as a prostitute for them.

Grayson then pulled a gun from the crotch of her pants, pointed it at Shadell and warned that if "a hoe tries to run away from her pimp, then they kill her or put her in the hospital, either one, but they do something pretty bad to her." Grayson showed Shadell the bullets in the chamber and described them as "the kind that ricochet through your body . . . ."

Grayson said Lewis provided her everything she needed, and said Lewis would do the same for Shadell.

Lewis returned to the motel and took Corrine to a house where she engaged in acts of prostitution. Corrine gave Lewis the $280 she earned that evening.

---

[3]*People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44].

While Lewis and Corrine were gone, Shadell walked with defendant Grayson to a convenience store to buy some items and then walked back to the motel.

When Lewis returned hours later, he asked Shadell if Grayson had talked to her, and what her reaction was. Shadell replied that she thought their idea was "stupid" and she reiterated that she wanted to leave. Lewis told her she could go, but said she could not use the phone and would not get a ride.

Shadell then discovered that $160 was missing from her purse, and she became very angry. Defendants warned her to be quiet or Lewis would beat her. Lewis said he would get her money back if she stayed with them.

Grayson took Shadell to Stockton Boulevard to solicit for prostitution. Grayson carried her gun with her and showed it to Shadell. She instructed Shadell what to do and say, but they were unsuccessful in their efforts.

They returned to the motel. Later that night, Shadell saw Lewis have sex with Corrine in the motel room.

In the morning, Shadell left while everyone else was asleep, and flagged down a passing highway patrol officer.

Defendants were arrested and placed in patrol cars. Before officers left the motel, they discovered Grayson's gun hidden behind the passenger's seat in the vehicle. Grayson admitted the gun was hers and said it had been "embedded into her crotch area," but informed the officers that she did not have the magazine for the gun. Because Shadell had told them otherwise, the officers instructed personnel at the jail to search Grayson. In response to their questions, Grayson told the jail officers that she had secreted the clip in her vagina, and she retrieved it.

At trial, Corrine admitted having sex with defendant Lewis. She denied having worked for defendants and instead testified she had worked as a prostitute on her own. Officers testified that Corrine had said otherwise in previous interviews.

The jury convicted Grayson of the kidnapping and false imprisonment of Shadell, as well as procuring and pandering, and found the charged firearm enhancements to be true. The jury also convicted Grayson of bringing explosives into the jail. (§ 4574.)

The jury acquitted both defendants of kidnapping Corrine, but found defendants guilty of pimping and pandering. The jury also convicted defendant Lewis of one count of lewd and lascivious conduct, and the court found Lewis's charged priors to be true.

The court sentenced defendant Grayson to an aggregate prison term of 20 years 8 months, and sentenced defendant Lewis to the mandated term of 50 years to life.

This appeal followed.

## DISCUSSION

### I

### *Admission of Evidence\**

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### II

### *Sufficiency of the Evidence*

■■■ Defendants assert there is insufficient evidence to support Grayson's conviction for violating section 4574 (count nine), as well as defendants' convictions on counts four and five, procuring and pimping relating to Corrine. None of these contentions has merit.

■■■ In reviewing a criminal conviction challenged as lacking evidentiary support, "the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].)

With these principles in mind, we turn to each of the convictions challenged here.

A.   *Conviction for Violating Section 4574 (Count 9)*

■■■ Section 4574, subdivision (a), provides in relevant part that "any person, who knowingly brings . . . into . . . any jail . . . any firearms, deadly weapons, or explosives . . . is guilty of a felony . . . ."

Defendant Grayson contends her motion for directed verdict should have been granted, and her conviction for violating this statute must be reversed,

---

*See footnote, *ante*, page 479.

because there was no evidence that the ammunition secreted in her vagina was an explosive as defined by section 12301 or Health and Safety Code sections 12000 and 12001. Defendant's claim is unpersuasive.

Initially, we note this argument was never raised in the trial court. In her motion for a directed verdict, defendant argued that, since she was handcuffed during the ride in the patrol car, she could not be deemed to have volitionally brought the ammunition into the jail. She also questioned whether the ammunition qualified as explosives because the bullets had not been tested.

Rejecting these arguments, the court noted that, while the ammunition had not been tested, an expert witness described how the ammunition worked and concluded there was no reason to think the unspent ammunition was not in fact explosive. The court also found that defendant's act was volitional because she could have informed the arresting officers she had secreted the clip in her vagina, but did not.

At no time did defendant assert that the ammunition was not an explosive because it did not meet the definition set forth in other statutory provisions. Consequently, defendant cannot now raise this claim to assert that her motion for directed verdict should have been granted.

Even if we set aside any issues relating to waiver, we find defendant's claim unpersuasive.

Health and Safety Code section 12000 offers a definition of explosives that excludes "ammunition . . . manufactured for use in shotguns, rifles, and pistols."[5] However, the application of this definition is expressly limited by the statute's introductory phrase, which states that this definition applies "[f]or the purposes of this part." This definition, by its own terms, applies only to part 1 ("High Explosives"), division 11 ("Explosives") of the Health and Safety Code.

The same limitation extends to other code sections cited by defendant. Health and Safety Code section 12001 outlines when Health and Safety

---

[5]This definition covers "any substance, or combination of substances, the primary or common purpose of which is detonation or rapid combustion, and which is capable of a relatively instantaneous or rapid release of gas and heat, or any substance, the primary purpose of which, when combined with others, is to form a substance capable of a relatively instantaneous or rapid release of gas and heat." (Health & Saf. Code, § 12000.) The statute then gives examples of explosives, and concludes in what is now denominated as subdivision (f) of Health and Safety Code section 12000: "For the purposes of this part, 'explosives' does not include any destructive device, as defined in Section 12301 of the Penal Code, nor does it include ammunition or small arms primers manufactured for use in shotguns, rifles, and pistols."

Code section 12000 is inapplicable, by stating: "This part [i.e., 'High Explosives'] does not apply to any of the following: . . ." Similarly, section 12301, referenced in Health and Safety Code section 12000, expressly states that its definition of "destructive devices" applies only to that chapter, i.e., chapter 2.5, "Destructive Devices," which is part of title 2, "Control of Deadly Weapons."[6]

Defendant cites cases such as *Dieckmann v. Superior Court* (1985) 175 Cal.App.3d 345, 356 [220 Cal.Rptr. 602] for the proposition that a term used in a similar manner in two related statutes concerning the same subject should be given the same meaning. However, defendant has not made the necessary predicate showing. Section 4574, section 12301, and Health and Safety Code sections 12000 and 12001 are not related statutes concerning the same subject. The Health and Safety Code provisions are found in the Explosives division, and reflect a statutory scheme concerned with the permits, disposition, sale and storage of high explosives. Section 12301 is part of a specific statutory scheme relating to destructive devices. Defendant has made no tenable argument for applying definitions from these contexts to section 4574, the offense at issue here. And, given the rationale behind section 4574, we see no reason for such an extension.

"[S]ection 4574 has a clear purpose: proscribing inmate possession of tangible items capable of use for armed attack and posing a serious threat to jail security." (*People v. Rodriquez* (1975) 50 Cal.App.3d 389, 399 [123 Cal.Rptr. 185].) Total proscription is necessary if inmates and officers are to be protected. (*Id.* at p. 396; *People v. Talkington* (1983) 140 Cal.App.3d 557, 561 [189 Cal.Rptr. 735]; *People v. Carter* (1981) 117 Cal.App.3d 546, 550 [172 Cal.Rptr. 838].) The statute does not require any specific intent on the part of a defendant. (*Talkington, supra,* 140 Cal.App.3d at p. 561.) "[S]ection 4574 is a stringent statute governing prison safety and serves an objective demanding relative inflexibility and relatively strict liability to problems compounded by inmate ingenuity." (*Talkington, supra,* 140 Cal.App.3d at p. 563.)[7]

Here, an expert witness described Grayson's .25-caliber semiautomatic weapon as having "a magazine that brings the bullets up . . . and operates

---

[6]CALJIC No. 12.56 provides a definition of "explosive destructive device" to reflect the technical meaning of this term as used in section 12301 and Health and Safety Code section 12000. (See *People v. Pruett* (1997) 57 Cal.App.4th 77, 81 [66 Cal.Rptr.2d 750].)

[7]Defendant notes that *Talkington* relied in part on a definition of "firearm" found elsewhere in the Penal Code in determining that the weapon defendant possessed in jail could be classified as a "firearm." (See *People v. Talkington, supra,* 140 Cal.App.3d at p. 562.) Given the policies behind, and strict liability imposed by, section 4574, we question whether this analysis was necessary. However, whatever the merit of the *Talkington* analysis, its discussion is irrelevant to determining whether definitions of explosives found in other code sections are applicable here.

from the gas explosion from the projectile." He said the ammunition found on defendant Grayson consisted of "live rounds," and he described these rounds as follows: "The end of it is a bullet. Then you have a casing and the end is a primer. [¶] In between or underneath the bullet is an amount of powder and fire gunpowder. The primer is ignited through the firing pin, and that creates an explosion of the powder inside there, driving the bullet out of the end of the weapon." In response to a question from the prosecutor, the expert witness stated he had no reason to believe these bullets were "not explosive in nature."

Given this testimony, there was ample evidence for the jury to conclude that by secreting this ammunition, defendant Grayson brought an explosive into the jail and violated section 4574.

B., C.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### III-VI*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### DISPOSITION

The judgment as to Grayson is modified to reflect that the sentence on count 2 is stayed pursuant to section 654. The trial court is directed to prepare a new abstract of judgment as to Grayson to (1) reflect this modification and to (2) change the description of count 3 from "dissuading a witness" to false imprisonment and to forward it to the Department of Corrections. In all other respects, the judgment as to Grayson is affirmed. The judgment as to Lewis is affirmed.

Sims, Acting P. J., and Callahan, J., concurred.

Appellants' petition for review by the Supreme Court was denied December 13, 2000.

---

*See footnote, *ante*, page 479.